HTS SERVICES, INC., Appellant,

v.

**HALLWOOD REALTY PARTNERS, L.P., Appellee.**

No. 01–04–01216–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 8, 2005.

Robert Glen Moll, Houston, TX, for appellant.

Drew Randolph Heard, Jenkens & Gilchrist, PC, Dallas, TX, for appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

After a bench trial in this post-judgment garnishment proceeding, the trial court rendered judgment in favor of appellee, Hallwood Realty Partners, L.P. ("Hallwood"). Appellant, HTS Services, Inc. ("HTS"), contends that the trial court erred in discharging the writ of garnishment because the evidence is legally insufficient to support the trial court's finding that Hallwood owed no money to HTS's judgment debtor, and thus had no funds upon which HTS could levy a writ of garnishment. HTS further contends that it conclusively proved that Hallwood owed the funds it sought to garnish to The Herman Group, L.P., the debtor named in HTS's judgment, pursuant to a contract Hallwood had with The Herman Group, L.P., or, alternatively, that the trial court's finding is against the great weight and preponderance of the evidence. We hold that the evidence supports the trial court's findings and therefore affirm.

## Factual and Procedural Background

In March 2003, HTS obtained a judgment against The Herman Group, L.P. for failure to pay a debt. HTS subsequently filed an application for writ of garnishment against Hallwood Commercial Real Estate LLC. In its answer to the writ, Hallwood Commercial Real Estate LLC stated it "was not indebted to Debtor, The Herman Group, L.P. ("Debtor")[,]" but was aware of "an agreement between Hallwood Realty Partners and Debtor *or a person related to Debtor.*" (Emphasis added). John Tuthill, Hallwood Commercial Real Estate LLC's Vice–President, verified the answer.

HTS nonsuited the first writ and then filed an amended application for writ of garnishment against Hallwood, alleging that Hallwood and The Herman Group, L.P. were parties to a consulting contract under which Hallwood paid The Herman Group, L.P. a monthly fee. In its answer, Hallwood stated that the consulting agreement was between Hallwood and "Sherri Herman d/b/a The Herman Group"—not "The Herman Group, L.P. (which is a separate legal entity)." Hallwood further stated that to its knowledge, The Herman Group, L.P. did not exist at the time Hallwood entered into the consulting agreement with Sherri Herman. Tuthill verified Hallwood's answer. HTS controverted Hallwood's denial, asserting that The Herman Group, L.P. "is either a successor-in-interest or the same entity as The Herman Group, all of which are merely vehicles for Sherri Herman to conduct business." Counsel for HTS verified HTS's controverting answer.

The trial court held a bench trial on the writ of garnishment on August 16, 2004. After hearing the evidence, the trial court rendered a judgment that dismissed the writ of garnishment against Hallwood and ordered that HTS take nothing. In a separate instrument, the trial court entered findings of fact and conclusions of law. The trial court found as follows:

1. On May 24, 2000, Hallwood Realty Partners, L.P. entered into an agreement with Sherri Herman and "The Herman Group" (an assumed name used by Sherri Herman).

2. On May 31, 2003, Hallwood Realty Partners, L.P. extended its agreement with Sherri Herman and "The Herman Group."

3. On December 2, 2003, Hallwood Realty Partners, L.P. and Sherri Herman and "The Herman Group" terminated their agreement.

4. The Herman Group, L.P. is a separate legal entity from Sherri Herman and "The Herman Group."

5. Hallwood Realty Partners, L.P. never had any contract with The Herman Group, L.P., never owed any money to The Herman Group, L.P., and does not owe any money to The Herman Group, L.P.

6. Garnishor HTS Services, Inc. obtained a judgment against The Herman Group, L.P. and not Sherri Herman or "The Herman Group."

7. The Writ of Garnishment issued on behalf of HTS Services, Inc. garnished any funds that Hallwood Realty Partners, L.P. owed to The Herman Group, L.P.

8. The Writ of Garnishment issued on behalf of HTS Services, Inc. did not garnish any funds that Hallwood Realty Partners, L.P. owed to Sherri Herman or "The Herman Group."

The trial court concluded as follows:

1. The Herman Group, L.P. is a separate legal entity from Sherri Herman and "The Herman Group" (an assumed name used by Sherri Herman).

2. The Writ of Garnishment issued on behalf of HTS Services, Inc. did not cover funds that Hallwood Realty Partners, L.P. owed to Sherri Herman and "The Herman Group."

3. Because Hallwood Realty Partners, L.P. never owed money to The Herman Group, L.P., Hallwood did not violate the Writ of Garnishment issued on behalf of HTS Services, Inc.

4. Hallwood Realty Partners, L.P. is not liable to Garnishor HTS Services, Inc. for any monies owed by The Herman Group, L.P. to HTS Services, Inc.

5. Hallwood Realty Partners, L.P. is discharged from the Writ of Garnishment served upon it in this case, and Garnishor HTS Services, Inc. shall not recover anything from Hallwood Realty Partners, L.P.

On appeal, HTS contends that (1) the trial court erred in finding that Hallwood's contract was with "Sherri Herman d/b/a The Herman Group" because Hallwood failed to prove that any such entity exists, and (2) the evidence is insufficient to support the trial court's finding that Hallwood's contract was with "Sherri Herman d/b/a The Herman Group."

### Analysis

*Standard of Review*

 In an appeal from a bench trial, a trial court's findings of fact have the same weight as a jury's verdict. *Amador v. Berrospe,* 961 S.W.2d 205, 207 (Tex.App.-Houston [1st Dist.] 1996, writ denied). When challenged, findings of fact are not conclusive if, as here, there is a complete reporter's record. *Id.* When there is a reporter's record, the trial court's findings of fact are binding only if supported by the evidence. *Id.* If the findings are challenged, we review the sufficiency of the evidence supporting the findings by applying the same standards that we use in reviewing the legal or factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

 If a party attacks the legal sufficiency of an adverse finding on an issue as to which it bears the burden of proof, then it must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). In reviewing such a "matter of law" challenge, we examine the record for evidence that supports the challenged finding, ignoring evidence to the contrary. *Id.* If no evidence exists to support the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

 In reviewing a factual sufficiency point, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *S.W. Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

 We review de novo a trial court's conclusions of law, and uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *In re Moers,* 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.). An appellant may not challenge a trial court's conclusions of law for lack of factual suffi-

ciency, but we review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium,* 83 S.W.3d at 794.

*Burden of Proof*

In its first issue, HTS asserts that the trial court erred in finding that Hallwood's contract was with "Sherri Herman d/b/a The Herman Group" because Hallwood failed to show that any such entity exists. HTS's argument fails in part because it improperly shifts the burden of proof to Hallwood. Moreover, the trial court heard evidence to support its findings.

■■■■ Garnishment is a proceeding in which the property, money, or credits of a debtor that are in the possession of another—the garnishee—are applied to the payment of the debt. *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.,* 824 S.W.2d 557, 558 (Tex.1992). The garnishor may enforce, against the garnishee, any rights the debtor could have enforced had he sued the garnishee directly. *Beggs v. Fite,* 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937).

The primary issue in a garnishment suit is whether the garnishee is indebted to, or has in his possession effects belonging to, the debtor.... The nature of the answer filed by the garnishee ... may or may not put in doubt the debtor's ownership of the funds.

....

... [T]he garnishee's answer may be of a character that raises doubt about who actually owns funds admittedly held by the garnishee for another. As indicated in the *Thompson*[1] opinion, an answer of that kind is sufficient standing alone to *put in issue* the debtor's ownership.... Consequently, the burden of proof falls upon the garnishor to establish affirmatively that the debtor *does*

own the funds, and the amount owned by him, if the garnishor wishes to recover any amount on the garnishment theory that the funds may be applied to the debtor's indebtedness because they are *his* property. If the garnishor's proof fails, he can of course recover nothing. *Putman Putman, Inc. v. Capitol Warehouse, Inc.,* 775 S.W.2d 460, 463 (Tex.App.-Austin 1989, writ denied) (citations omitted).

■■■ Here, Hallwood's answer "raise[d] doubt about who actually owns funds admittedly held by the garnishee for another." *Id.* Hallwood stated in its verified answer that its consulting agreement was with "Sherri Herman d/b/a The Herman Group"—not "The Herman Group, L.P. (which is a separate legal entity)." Thus, Hallwood asserted that it was not indebted to The Herman Group, L.P. Hallwood's answer "put in issue" The Herman Group, L.P.'s entitlement to funds under the consulting agreement, and the burden of proof therefore fell upon HTS as garnishor to establish affirmatively that The Herman Group, L.P. was entitled to funds under the consulting agreement. *Id.*

*Conclusive Proof of the Identity of the Judgment Debtor*

■■■ In its brief, HTS acknowledges that it bears the burden of proof under *Putman,* but urges that if a garnishee asserts that a third party owns the funds, we should require the garnishee to show the third party actually exists. HTS does not cite to any law for this proposition. Instead, HTS contends that the uncorroborated testimony of a garnishee cannot establish that another person is doing business under an assumed name if official public records do not show that an assumed name certificate exists.

---

**1.** *Thompson v. Fulton Bag & Cotton Mills,* 155 Tex. 365, 286 S.W.2d 411, 414 (1956).

HTS's argument fails for two reasons. First, the trial court in this case did not have to rely on the garnishee's "uncorroborated testimony" in finding that Hallwood's consulting agreement—the source of the funds sought by HTS—was with Sherri Herman and The Herman Group, an assumed name used by Sherri Herman. The evidence at trial showed that the consulting agreement, dated May 24, 2000, was signed by Hallwood and Sherri M. Herman as President of The Herman Group. The evidence also showed that The Herman Group, L.P. did not file its certificate of limited partnership with the Secretary of State until October 13, 2000. Thus, The Herman Group, L.P. did not exist at the time the parties entered into the consulting agreement; as a result, The Herman Group, L.P. was not, and could not have been, a party to the consulting agreement. This corroborates Mr. Tuthill's testimony that Hallwood contracted with Sherri Herman, who signed the contract as The Herman Group—and not The Herman Group, L.P.

Second, although HTS is correct that Texas law requires parties to file assumed name certificates [2] and imposes civil [3] and criminal [4] penalties for failing to do so, the fact that Sherri Herman failed to file an assumed name certificate for The Herman Group does not mean it was impossible for Hallwood to contract with The Herman Group. In fact, the opposite is true under Texas law. "Failure to comply with the provisions of this chapter [mandating the filing of assumed name certificates] shall not impair the validity of any contract or act by such person...." TEX. BUS. & COM. CODE ANN. § 36.25 (Vernon 2002). Thus, Sherri Herman's failure to file an assumed name certificate did not impair the validity of Hallwood's contract with Sherri Herman and The Herman Group.

Accordingly, we overrule HTS's first issue.

*Sufficiency of the Evidence*

In its second issue, HTS asserts that the plain language of the consulting contract demonstrates that the trial court's finding that Hallwood's agreement was with "Sherri Herman d/b/a The Herman Group" was against the great weight and preponderance of the evidence. We disagree. As previously discussed, the plain language of the consulting agreement states that the parties to the agreement are Hallwood and Sherri M. Herman, who signed the contract in her capacity as President of The Herman Group. The contract does not mention The Herman Group, L.P.—nor could it, since The Herman Group, L.P. did not exist at the time the parties signed the contract. Thus, contrary to HTS's argument, the contract indicates that Hallwood contracted with The Herman Group—not The Herman Group, L.P.

HTS observes that the parties' contract extension and termination agreements

**2.** Under the Assumed Business or Professional Name Act, "[a]ny person who regularly conducts business or renders professional services ... in this state under an assumed name shall file in the office of the county clerk in each county in which such person has ... business or professional premises ... a certificate setting forth the assumed name under which such business or professional service is ... conducted or rendered[.]" TEX. BUS. & COM.CODE ANN. § 36.10(a)(1) (Vernon 2002).

**3.** If a person fails to file an assumed name certificate as required by Chapter 36, such person is not permitted to bring suit until she files an assumed name certificate. *Id.* § 36.25; *see also Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 55 (Tex.2003) (failure to file an assumed name certificate "affects a plaintiff's capacity to bring suit").

**4.** Intentional failure to file an assumed name certificate is a Class A misdemeanor. TEX. BUS. & COM.CODE ANN. § 36.26 (Vernon 2002).

added Sherri Herman, individually, to the agreement.[5] According to HTS, no reason existed to add Sherri Herman later if she was already a party to the original contract by virtue of her d/b/a "The Herman Group." This argument is unavailing because The Herman Group, L.P. did not exist at the time the parties entered into the original contract; therefore, The Herman Group, L.P. was not, and could not have been, a party to the original contract. If anything, the fact that the parties added Sherri Herman in her individual capacity to the extension agreement means the parties also could have added The Herman Group, L.P. in October 2000 when it was formed, or they could have added The Herman Group, L.P. at the time they added Sherri Herman individually. The parties, however, did not add The Herman Group, L.P. to their contract, and we cannot simply assume, contrary to the trial court's findings, "that 'The Herman Group' had always been or was now The Herman Group, L.P.[,]" as HTS would have us do. *See Putman,* 775 S.W.2d at 463 (garnishor has burden of proof to establish affirmatively that debtor *does* own funds).

Here, sufficient evidence supports the trial court's finding that Hallwood contracted with Sherri Herman and The Herman Group, an assumed name used by Sherri Herman. First, the contract, dated May 24, 2000, identifies the parties as Hallwood and Sherri M. Herman, who signed the contract in her capacity as President of The Herman Group. The Certificate of Limited Partnership of The Herman Group, L.P. was not filed until October 13, 2000. Second, Mr. Tuthill, Hallwood's Vice–President, testified that Hallwood "never had a contract with The Herman Group, L.P."; rather, its contract was with Sherri Herman "and the way she signed her contract was The Herman Group[.]" Third, Hallwood introduced into evidence two checks it sent to Sherri Herman pursuant to the consulting agreement. One check was made payable to "Sherri Herman," while the other was made payable to "Sherri Herman dba Herman Group." Thus, the record supports the trial court's decision that Hallwood did not enter into a consulting agreement with the same entity against which HTS obtained its judgment.

### Conclusion

We conclude that legally and factually sufficient evidence supports the trial court's finding that Hallwood contracted with Sherri Herman and The Herman Group, an assumed name used by Sherri Herman. We further conclude that the trial court's judgment is not contrary to the great weight and preponderance of the evidence. Accordingly, we affirm the judgment of the trial court.

---

5. On May 31, 2003, the parties agreed to extend the original contract for one year. This extension agreement was signed by Hallwood, by Sherri M. Herman in her capacity as President of The Herman Group, and by Sherri M. Herman in her individual capacity.

On December 2, 2003, the parties terminated the contract. The termination agreement was signed by Hallwood, by Sherri M. Herman in her capacity as President of The Herman Group, and by Sherri M. Herman in her individual capacity.