Opinion filed January 10, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed January 10,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00112-CV

                                                    __________

 

                                     ROBERTA A. KALE, Appellant

                                                             V.

                               ALLIANCE
HOSPITAL, LTD., Appellee

 



 

                                         On
Appeal from the 358th District Court

                                                           Ector
County, Texas

                                                Trial
Court Cause No. D-118,353

 



 

                                             M
E M O R A N D U M   O P I N I O N

Roberta
A. Kale brought this action against her former employer, Alliance Hospital,
Ltd. Kale alleged that she was entitled to recover severance benefits under the
terms of her employment agreement with Alliance.  The trial court conducted a
bench trial and determined that Kale was not entitled to receive severance
benefits.  Pursuant to a stipulation of the parties, the trial court found that
Kale was entitled to recover from Alliance paid time off (PTO) benefits in the
amount of $12,148.95 and attorney=s
fees related to her claim for PTO benefits in the amount of $4,049.65.  The
trial court entered judgment accordingly.  Kale appeals from the trial court=s denial of severance benefits. 
We affirm.

 

 








                                                               Background
Facts

Alliance
was formed in 2001 for the purpose of developing a new acute care hospital in
Odessa, Texas.  The planned name for the hospital was Alliance Hospital. 
SRI-SAI was the general partner of Alliance.  The following individuals served
on SRI-SAI=s board of
directors: Sudhir P. Srivastava, M.D.; William G. Reilly, M.D.; Jayaram B.
Naidu, M.D.; Ramachandrarao Kolluru, M.D.; Suresh N. Gadasalli, M.D.; Madhava
Agusala, M.D.; John Challapalli, M.D.; Richard L. Duke, M.D.; M.C. Parekh,
M.D.; R.J. Patel, M.D.; and Steven C. Riley, M.D.  The same individuals served
on Alliance=s board of
directors.

Alliance
hired Kale to serve as its chief executive officer.  Alliance and Kale entered
into a written employment agreement.  The agreement provided that Kale=s term of employment would
begin on January 1, 2002, and end on December 31, 2006, and that Kale would
receive an annual base salary equal to $175,000.  Article 6.1 of the agreement
provided that Kale would receive severance compensation if her employment was
involuntarily terminated (as such term was defined in the agreement) before the
expiration of the term of her employment.  Article 6.1 also provided that, if
Alliance Hospital had opened and admitted patients at the time of an
involuntary termination of Kale=s
employment, A[Kale]
shall receive severance pay equal to twelve (12) months current base salary plus
any incentive compensation paid [during the] immediately preceding twelve (12)
month period, computed based upon [Kale=s]
current monthly base salary and paid incentive at the date of termination.

Article
6.2 defined involuntary termination as Atermination
of [Kale=s] employment
with [Alliance] (A) by [Alliance] for any reason whatsoever except for Cause or
upon [Kale=s] death or
becoming Permanently Disabled or (B) by [Kale] for Good Reason.@  Article 2.2(iii)(C)
defined cause for termination as follows:

2.2
[Alliance=s]
Right to Terminate.  Notwithstanding the provisions of [the term paragraph
of this agreement], [Alliance] shall have the right to terminate [Kale=s] employment under this
Agreement at any time prior to the expiration of the Term for any of the
following reasons: 

 

(iii)
for ACause,@ which, for purposes of
this Agreement, shall mean termination by action of the General Partner of
[Alliance] because of [Kale=s]

 








(C) willfully engaging in conduct that she knows or should know may be materially
injurious to [Alliance] or any of its affiliates.

 

In Article 2.4, Alliance and Kale acknowledged and agreed that Athe decision as to whether
Cause exists for termination of the employment relationship by [Alliance] is
delegated to [SRI-SAI] for determination.@ 
The parties also agreed in Article 2.4 that, A[i]f
[Kale] disagrees with the decision reached by [SRI-SAI], then the dispute will
be limited to whether [SRI-SAI] reached its decision in good faith.@

Alliance Hospital opened in June 2003.  Alliance owned
and operated the hospital.  As of December 2003, the hospital was operating at
about an $8,000,000 loss.  On January 21, 2004, SRI-SAI=s board of directors met and voted to
terminate Kale=s
employment with Alliance if Kale refused to voluntarily resign from her employment. 
On January 22, 2004, Dan Hollmann, the attorney for Alliance and SRI-SAI, sent
Kale the following e-mail:

The
Board of Directors of [SRI-SAI] met last night, Wednesday, January 21, 2004,
with all Directors attending.  A resolution was unanimously passed setting a
special meeting for Sunday, January 25, 2004[,] at 11:30 a.m., to be held at my
office.  I have been instructed to inform you of that meeting and request that
you be present.  I have also been asked to instruct you that on your return,
you not go to the Hospital.  I will be available through the weekend if you
have any questions.

 

On the same date, Kale responded to Hollmann=s e-mail with the following e-mail: 

Thanks for the notice.  I am sorry that this has to end this way.  Will
call you when I return on Saturday evening [if] it is not too late.

                                                       

Hollmann
testified that Kale came to his office on January 25 and told him that she did
not want to attend the special meeting and that, therefore, the board of
SRI-SAI decided not to conduct the special meeting.  Hollmann said that he, Dr.
Srivastava, Dr. Reilly, and Bill Elms (an accountant for Alliance) met with
Kale in early February 2004.  He said that Kale was asked to resign at the
meeting and that, when Kale said that she would not resign, she was told that
she was going to be terminated.








On
October 25, 2004, Kale filed this cause against Alliance.  She alleged that she
had been terminated from her employment without cause in January 2004 and that
her first notice of the termination was Hollmann=s
January 22, 2004 e-mail.  She further alleged that she was entitled to recover
from Alliance severance benefits under the employment agreement.  Following a
bench trial, the trial court entered judgment denying Kale the recovery of
severance benefits.

                                                      Trial
Court=s
Findings of Fact

The
trial court entered findings of fact in support of its judgment.  In Findings
of Fact No. 9a through 9f, the trial court found that Kale had willfully
engaged in conduct that she knew or should have known could be materially
injurious to Alliance by:

a.  functioning as a
shareholder and member of the BulldogIT Corporation Board of Directors (which
constitutes a breach of her duty of loyalty to SRI-SAI and ALLIANCE pursuant to
' 1.5 of KALE=s Employment Agreement);

 

b.  failing and/or
refusing to inform SRI-SAI and/or ALLIANCE that the Hospital would be the alpha
site for the BulldogIT program;

 

c.  knowingly
misrepresenting to and/or withholding information from SRI-SAI and/or ALLIANCE
regarding the status and amounts of the accounts payable and accounts
receivable of the Hospital;

 

d. withholding and
requesting other employees of ALLIANCE to withhold truthful and relevant
information from SRI-SAI and/or ALLIANCE=s
Board of Directors concerning the accurate financial condition of the Hospital;

 

e. ineffectively
managing the day-to-day affairs of ALLIANCE; and

 

f. allowing her
self-dealing and personal interests to circumvent the fiduciary and contractual
duties and responsibilities she was obligated to abide by and comply with as
the CEO.

 

In Findings of
Fact No. 12a through 12c, the trial court found that SRI-SAI acted in good
faith (a) in terminating Kale, (b) in determining that Kale=s actions were contrary to
the best interest of SRI-SAI and/or Alliance, and (c) in concluding that Kale
had willfully engaged in conduct that she knew or should have known could be
materially injurious to Alliance or any of its affiliates. In Finding of Fact
No. 13, the trial court found that Kale had notice of her termination.

                                                                Issues
on Appeal








Kale
presents eight issues for review.  In her first issue, Kale contends that
Alliance failed to establish that it terminated her for Agood cause@
so as to be excused from the obligation to pay severance compensation to her
and, alternatively, that the evidence was legally and factually insufficient to
support the trial court=s
finding that she was not entitled to additional severance compensation.  In her
second through seventh issues, Kale asserts that the evidence was legally and
factually insufficient to support the trial court=s
Findings of Fact No. 9a through 9f.  In her eighth issue, Kale contends that
she was entitled to severance pay because the evidence supports the conclusion
that Kale terminated the agreement for Agood
reason@ as that term
was defined in the agreement.

                                                                 Severance
Issues

Under
the employment agreement, Kale was entitled to receive severance benefits if
her employment was involuntarily terminated before the employment term
expired.  The definition of Ainvoluntary
termination@ included
Alliance=s termination
of Kale=s employment Afor any reason whatsoever
except for [c]ause.@ 
The definition of Acause@ included Kale=s Awillfully engaging in conduct that she knows
or should know may be materially injurious to [Alliance] or any of its
affiliates.@

Kale
asserts that Alliance had the burden to prove that Agood cause@
existed for her termination in order to avoid the obligation to pay severance
benefits.  However, in Article 2.4 of the employment agreement, Kale and
Alliance agreed to delegate to SRI-SAI the decision as to whether cause existed
for terminating Kale=s
employment.  Kale and Alliance also agreed that, if Kale disagreed with SRI-SAI=s decision, then the
dispute would be limited as to whether SRI-SAI reached its decision in good
faith.  Based on Article 2.4, the controlling issue in this cause is not
whether Agood cause@ existed for terminating
Kale=s employment. 
Rather, the controlling issue is whether SRI-SAI in good faith reached its
decision that cause (as defined in the agreement) existed for terminating Kale=s employment.








The
Agood faith@ provision in Article 2.4
is similar to the implied Agood
faith@ requirement for
an employer to terminate an employee under a satisfactory services contract. 
If a contract requires an employee to render satisfactory services, the
employer has the right to terminate the employee when the employer, acting in
good faith, is actually dissatisfied with the employee=s work.  Lone Star Gas Co. v. Pippin,
620 S.W.2d 922, 924 (Tex. Civ. App.CDallas
1981, writ ref=d
n.r.e.).  A[I]t is not
essential to the existence of the right to discharge the employee that the
employer have any real or substantial ground for dissatisfaction, yet he must
act honestly and in good faith.@ 
Id.  In cases involving satisfactory services provisions, the employee
has the burden of proof to establish that the employer was not honestly
dissatisfied with the employee=s
work.  Id.  Similarly, we conclude that Kale had the burden to prove
that SRI-SAI lacked good faith in reaching its decision that cause existed for
terminating Kale=s
employment.  However, even assuming that Alliance had the burden of proof on
the Agood faith@ issue, the outcome of this
appeal remains the same for the reasons set forth below.

                                                               Standard
of Review

In
an appeal from a bench trial, a trial court=s
findings of fact have the same weight as a jury=s
verdict.  HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190 S.W.3d
108, 111 (Tex. App.C
Houston [1st Dist.] 2005, no pet.); In re K.R.P., 80 S.W.3d 669, 673
(Tex. App.CHouston
[1st Dist.] 2002, pet. denied).  The trial court=s
findings of fact are reviewable for legal and factual sufficiency.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  In an appeal
from a nonjury trial, an attack on the sufficiency of the evidence must be
directed at specific findings of fact, rather than the judgment as a whole.  Arrellano
v. State Farm Fire & Cas. Co., 191 S.W.3d 852, 855-56 (Tex. App.CHouston [14th Dist.] 2006,
no pet.).  Unchallenged findings of fact are binding on an appellate court
unless the contrary is established as a matter of law or there is no evidence
to support the finding.  McGalliard v. Kuhlmann, 722 S.W.2d 694, 696
(Tex. 1986).

                                                                        Analysis

In
Findings of Fact No. 9a through 9f, the trial court found that Kale had
willfully engaged in conduct that she knew or should have known could be
materially injurious to Alliance.  Thus, the trial court found that Kale had
engaged in conduct that constituted Acause@ for termination under
Article 2.2(iii)(C) of the employment agreement.  Kale attacks the legal and
factual sufficiency of the evidence to support the trial court=s Acause@
findings (Findings of Fact No. 9a through 9f) in her second through seventh
issues on appeal.  However, Kale does not challenge the trial court=s findings that SRI-SAI
acted in good faith in terminating her and in concluding that she had willfully
engaged in conduct that she knew or should have known could be materially
injurious to Alliance or any of its affiliates (Findings of Fact No. 12a
through 12c).  The trial court=s
unchallenged Agood
faith@  findings are
binding on us unless the contrary is established as a matter of law or there is
no evidence to support the findings.  McGalliard, 722 S.W.2d at 696.








A
review of the record demonstrates that there is evidence to support the trial
court=s unchallenged
findings that SRI-SAI acted in good faith in terminating Kale and in concluding
that Kale had willfully engaged in conduct that she knew or should have known
could be materially injurious to Alliance or any of its affiliates.  Alliance
presented evidence that Alliance Hospital was over $6,000,000 in debt in
December 2003.  Alliance also presented evidence that Kale withheld information
from Alliance=s board
of directors about the true financial condition of Alliance Hospital. Bill
Elms, an accountant for Alliance, testified that, at a January 9, 2004 meeting,
Dr. Reilly asked Phil Sosa, Alliance=s
chief financial officer, why Alliance=s
board had not been told that Alliance might not be able to make its payroll
obligation.  Elms said that Sosa responded by saying that Ahe was told not to discuss
it with the board.@ 
Dr. Reilly gave similar testimony.  Dr. Reilly testified that Sosa Awas afraid to give us the
true picture in front of [Kale] or he implied that he just really hadn=t been free to give us the
true financial status of the hospital.@ 
Dr. Reilly said that Sosa implied that Kale had instructed him not to give the board
the true financial condition of the hospital.  Dr. Srivastava testified
that he, Elms, and Hollmann talked with Sosa about the problems at the
hospital.  Dr. Srivastava said that Sosa told them that Kale had instructed him
Adon=t tell the board@ about the problems.

Kale
presented evidence disputing Alliance=s
evidence that she had withheld financial information from Alliance=s board.  Kale testified
that she never instructed Sosa not to deliver information to any members of the
board.  Sosa testified that Kale did not instruct him not to share information
with the board.  Kale also presented evidence that the members of the board
received monthly financial statements and other financial information.








In
a bench trial, the trial court alone determines the credibility of the
witnesses and the weight to be given their testimony, and it may accept or
reject all or any part of that testimony.  Nordstrom v. Nordstrom, 965
S.W.2d 575, 580-81 (Tex. App.CHouston
[1st Dist.] 1997, pet. denied).  Under this standard, the trial court was free
to believe the testimony of Elms, Dr. Reilly, and Dr. Srivastava and to reject
the testimony of Kale and Sosa.  Based on the evidence, the trial court could
have reasonably concluded that Kale withheld information from the board and
instructed Sosa to do the same and that SRI-SAI acted in good faith in
concluding that Kale had willfully engaged in conduct that she knew or should
have known could be materially injurious to Alliance and in terminating Kale.  
Because there is some evidence to support the trial court=s unchallenged  Agood faith@ findings, those findings
are binding on this court.  McGalliard, 722 S.W.2d at 696.

The
trial court=s
unchallenged Agood
faith@ findings
support its judgment denying Kale the recovery of severance benefits.  Therefore,
we overrule Kale=s
first through seventh points of error.

In
her eighth issue, Kale contends that the evidence supports the conclusion that
she terminated her employment with Alliance for Agood
reason@ as that term
is defined in the agreement and that, therefore, she is entitled to severance
pay under the employment agreement.  The trial court did not find that Kale
terminated her employment with Alliance.  Rather, the trial court found that
Alliance terminated Kale=s
employment.  Kale does not challenge the trial court=s finding that Alliance terminated her employment,
and the trial court=s
finding that Alliance terminated Kale=s
employment is supported by the evidence.  As stated above, Hollmann e-mailed
Kale and told her not to go to the hospital.  Kale responded:  AI am sorry that this has to
end this way.@ 
Alliance also presented evidence that Kale refused to resign and that,
therefore, she was told that she was going to be terminated.  Hollmann
testified that Kale understood that she was being terminated.  Additionally,
Kale alleged in her petition that Alliance had terminated her without cause. 
She did not allege that she had terminated her employment for good reason. 
Because the evidence supports the trial court=s
unchallenged finding that Alliance terminated Kale, we overrule Kale=s eighth issue.

                                                               This
Court=s Ruling

We
affirm the judgment of the trial court.

 

TERRY McCALL

January 10, 2008                                                                      JUSTICE

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.