Opinion issued October 29,
2009

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-07-01004-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



LEE-WAY PRINCE ENTERPRISES, LLC, Appellant

 

V.

 

QAI ASSURANCE, INC. and ARTHUR KWOK, Appellees

 

 



On Appeal from the 269th District Court

Harris County, Texas

Trial Court Cause No. 2006-00092

 

 

MEMORANDUM
OPINION

 

In July 2000, Lee-Way Prince
Enterprises, LLC (Prince) purchased property located at 9111 Katy Freeway (the
property) from QAI Assurance, Inc. and Arthur Kwok (collectively, QAI).  Under
their agreement, QAI continued to manage the property until its sale to a third
party in February 2004.  Before the sale, the parties met to adjust the amounts
paid and owed between them, which QAI recorded in a document entitled “Cash
Flow for 9111 Katy Freeway Building” (cash flow statement).  

After the sale, a dispute arose
between QAI and Prince.  Prince sued QAI for breach of contract, fraud,
promissory estoppel, negligence, and conversion based on QAI’s alleged conduct
during the management period.  QAI countersued for promissory estoppel,
contending that Prince had agreed that the cash flow statement contained the
final accounting and settlement between the parties concerning the property. 
QAI also sought a declaration that the cash flow statement was a valid and
enforceable settlement agreement. 

After a bench trial, the trial court
entered a take-nothing judgment on Prince’s claims, and awarded QAI damages and
attorney’s fees.  Prince appeals these rulings.  

Prince contends that the trial court
erred in awarding QAI its attorney’s fees because Texas law does not authorize
an award of fees based on a promissory estoppel claim, and because the amount
of fees awarded is unreasonable.[1] 
In addition, Prince complains that the trial court should have dismissed QAI’s
counterclaim as improperly filed.  With respect to its own claims, Prince
contends that the trial court erred in rejecting its fraud claim.  We conclude
that sufficient evidence supports the trial court’s findings and that it
awarded attorney’s fees pursuant to an enforceable agreement.  We therefore
affirm.

BACKGROUND

In 2000, QAI transferred the property
to Prince.  In exchange for the deed of trust, Prince paid $250,000 to QAI and
executed a purchase money promissory note payable to QAI in the original
principal amount of $695,500.00 plus interest.  The promissory note obligated
Prince to make a monthly payment of $5,975.41, plus “a sum equal to 1/12 of the
annual amounts as reasonably estimated by payee of taxes and premiums for
insurance on the property.”  The deed of trust provided: 

If grantor
fails to perform any of grantor’s obligations under the note and/or deed of
trust described above, beneficiary may perform those obligations, advance funds
required, and then be reimbursed by grantor on demand for any sum so advanced,
including attorney fees, plus interest on those sums, from the dates of payment
at the highest legal rate.  The sums to be reimbursed shall be secured by this
deed of trust.  

Arthur Kwok, QAI’s principal,
testified that QAI had agreed to make Lee-Way’s monthly note payment from the
revenues, but only when enough was left in the account after payment of the
underlying note and the operating expenses.  Usually, Kwok explained, the
revenues fell short of the monthly amount due on the note.  Prince also
admitted that it did not make the regular monthly rent payment due for the
office space in the property.  

When QAI transferred the property to
Prince, QAI also agreed to manage the property in exchange for a fee of four
percent of the gross collected monthly rental income.  The parties did not put
this agreement in writing.  QAI paid the monthly operating expenses out of a
checking account it maintained for that purpose, which QAI opened with its own
funds.  Prince did not advance any funds for building operations.  QAI provided
Prince with building management expense and revenue reports approximately every
six months.  In January 2004, Prince demanded access to QAI’s management
records in anticipation of a sale of the property in late February 2004.  QAI
made the records available for Prince to review.  

Shortly before the sale, QAI prepared
the cash flow statement, in which it itemized the amounts Prince owed for
operating expenses, management fees, and principal, penalties, and penalty
interest on the note.  Kwok testified that QAI waived administrative expenses
and default charges in the cash flow statement as part of the agreement between
QAI and Prince to settle their disputes arising out of their business
relationship.  

The bottom of the cash flow statement
contains the handwritten word “Agreed”, followed by the date (February 20,
2004) and the signatures of Prince’s principal, Wayman Prince, and Arthur
Kwok.  At the closing, which took place five days after the parties signed the
cash flow statement, Prince received payment of close to $299,000, nearly
$49,000 more than his initial investment in the property. 

In a letter dated June 3, 2005,
Prince notified QAI that it had retained a certified public accountant to
perform an independent audit of QAI’s reported management expenses.[2] 
After outlining perceived discrepancies concerning the amount expended on
certain items, Prince made a formal demand that QAI pay $41,970.25.  Prince
further informed QAI that it was auditing the rental income for the property
and would send the results of that audit to QAI when completed.  On June 23,
2005, Prince sent another letter to QAI informing it that the rental income
audit revealed additional amounts owed to Prince, and increased its formal
demand to a total of $286,968.12.  

After a bench trial on Prince’s
various claims and QAI’s promissory estoppel counterclaim, the trial court
entered a take-nothing judgment on Prince’s claims and awarded QAI $31,236.04 in
damages plus $154,976.28 in attorney’s fees, including appellate attorney’s
fees conditioned on QAI’s success on appeal.  

The trial court made findings of fact
and conclusions of law, in which it found that Prince promised QAI that he
accepted and agreed to the amounts reflected on the cash flow statement as the
final accounting and settlement between the parties concerning the property. 
Similarly, it found that QAI accepted and agreed to a final settlement payment
of $835,676.03, the amount reflected on the statement.  

DISCUSSION

Standard of review

Prince challenges the trial court’s
findings of fact concerning its own common-law fraud claim as well as the trial
court’s legal conclusions concerning QAI’s counterclaims.  “In an appeal from a
bench trial, a trial court’s findings of fact have the same weight as a jury’s
verdict.”  HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190
S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.); Lee v. Lee,
981 S.W.2d 903, 905 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  Thus,
when an appellant challenges the trial court’s findings of fact, we review the
sufficiency of the evidence supporting the findings by applying the same
standards that we use in reviewing the legal or factual sufficiency of the
evidence supporting jury findings.  Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).  

A legal sufficiency evidentiary
challenge on an issue on which an appellant bears the burden of proof requires
the appellant to demonstrate that the evidence conclusively established all
vital facts to support the issue.  Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989); Solares v. Solares, 232 S.W.3d 873, 878–79
(Tex. App.—Dallas 2007, no pet.). Evidence is conclusive “only if reasonable
people could not differ in their conclusions, a matter that depends on the
facts of each case.”  City of Keller v. Wilson, 168 S.W.3d 802, 816
(Tex. 2005). 

When a party is challenging the
factual sufficiency of a finding regarding an issue upon which that party had
the burden of proof, that party must demonstrate that the adverse finding is
against the great weight and preponderance of the evidence. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001).  The trial court, as fact finder,
is the sole judge of the credibility of the witnesses.  HTS Servs., 190
S.W.3d at 111; see also City of Keller, 168 S.W.3d at 819. 
Consequently, we may not displace a finding simply because we would reach a
different answer on the evidence.  See Maritime Overseas Corp. v. Ellis,
971 S.W.2d 402, 407 (Tex. 1998).

We review de novo a trial court’s
conclusions of law, and uphold them on appeal if the judgment can be sustained
on any legal theory supported by the evidence.  BMC Software Belgium v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002); In re Moers, 104 S.W.3d
609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  

Attorney’s fees challenge

Basis for fee award

Prince contends that the trial court
erred in awarding QAI its attorney’s fees because Texas law does not allow an
award of attorney’s fees based on a claim of promissory estoppel.  Prince
recognizes that Texas courts currently are split on this issue. Compare
Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P., 154 S.W.3d 634, 635–38
(Tex. App.—Houston [14th Dist.] 2004, pet. abated) (holding that attorney’s
fees are not recoverable under Tex. Civ. Prac. & Rem. Code § 38.001(8) for
promissory estoppel claim because such claims presuppose no “oral or written
contract”) (quoting Subaru of Am., Inc. v. David McDavid Nissan, Inc.,
84 S.W.3d 212, 226 (Tex. 2002) (“promissory estoppel doctrine presumes no
contract exists”)) with Preload Tech., Inc. v. A.B. & J. Constr. Co.,
696 F.2d 1080, 1094–95 (5th Cir. 1983) (upholding attorney’s fees awarded under
Texas law for promissory estoppel claim); Traco, Inc. v. Arrow Glass Co.,
814 S.W.2d 186, 194–95 (Tex. App.—San Antonio 1991, writ denied); Safe Env’t
v. Pelzel & Assocs., Inc., No. 03-09-00721-CV, 1999 WL 815819, at
*31999 Tex. App. LEXIS 7628 (Tex. App.—Austin 1999, no pet.) (mem. op.).  

Our precedent on this issue is
contrary to the Fourteenth Court of Appeals’ decision in Sambuca.  See
Adams v. Petrade Int’l, 754 S.W.2d 696, 720 (Tex. App.—Houston [1st Dist.]
1988, writ denied).  Nevertheless, we need not reconsider our position, because
the trial court’s judgment does not specify the theory under which fees were
awarded, and the trial court’s findings of fact and conclusions of law provide
a contractual basis for the attorney’s fee award.  Specifically, the trial
court found that

23.  On February 20, 2004, plaintiff and defendants
agreed to resolve their disputes by applying a credit from QAI in favor of
plaintiff in the amount of $31,236.04 as reflected in the Cash Flow Statement
rather than escrowing the sales proceed from Houston PARS properties at
closing.

24.  On February 20, 2004, plaintiff and defendants
executed the Cash Flow Statement . . . that identified the agreed upon income,
expense and management fee figures for the Property during the Management
Period.

25.  The Cash Flow Statement also identified the
agreed upon principal balance plaintiff owed QAI on the Note as of February 20,
2004.

26.  The Cash Flow Statement also identified the
agreed upon default interest, penalties and penalty interest that had accrued
under the Note as of February 20, 2004.  

The trial court concluded that

41.  By executing the Cash Flow Statement as “agreed,”
plaintiff promised that it would accept $31,236.04 to resolve plaintiff’s
disputes with defendants concerning all matters between the parties with respect
to the property including amounts owed by plaintiff to defendants under the
Note. 

. . . .

44.  Plaintiff failed to abide by its promise that
plaintiff would accept $31,236.04 to resolve plaintiff’s disputes with
defendants concerning all matters between the parties with respect to the
Property including amounts owed by plaintiff to defendants under the Note
caused defendants to suffer damages in the amount of $41,236.04 plus reasonable
attorney’s fees and expenses.

45.  Defendants incurred reasonable attorney’s fees
and expenses in the amount of $154,976.28 as a result of plaintiff’s failure to
abide by its promise that plaintiff would accept $31,236.04 to resolve
plaintiff’s disputes with defendants concerning all matters between the parties
with respect to the Property including amounts owed by plaintiff to defendants
under the Note.

In its counterclaim, QAI sought its
attorney’s fees as relief.  The trial court’s findings of fact and conclusions
of law support an award of attorney’s fees under the Civil Practice and
Remedies Code.  See Tex. Civ.
Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008) (allowing for
recovery of reasonable attorney’s fees on claim for oral or written contract). 
The findings identify an agreement among the parties; Prince’s breach of that
agreement; and damages incurred by QAI resulting from that breach.  The issue
of whether the cash flow statement was a settlement agreement, the breach of
which would support an award of attorney’s fees, was tried by consent.  See Tex. R. Civ. P. 67.  Prince does not
challenge any of the trial court’s findings of fact and conclusions of law.  We
conclude that the fee award does not rest on a promissory estoppel theory.  We
hold that the applicable statutory authority and the evidence support the trial
court’s award of attorney’s fees.

Excessiveness

Prince also challenges the attorney’s
fees award as “exorbitant” and “extraordinarily excessive.”  This challenge,
however, is conclusory.  Prince fails to cite any authority in support of its
contention and does not identify as error any specific trial court finding in
support of the attorney’s fees award.  We therefore hold that Prince has waived
this issue due to inadequate briefing.  See Tex. R. App. P. 38.1(i).

Sufficiency of evidence in support of
common-law fraud claim 

Prince next contends that the trial
court erred in rejecting its fraud claim because Prince justifiably relied on
the material misrepresentations contained in the cash flow statement, and QAI
knew that the statement was false and intended for Prince to rely on it.  We
construe Prince’s contention as one of factual sufficiency, i.e., that
the trial court’s dismissal of his common-law fraud claim is against the great
weight and preponderance of the evidence.  

To prevail on a fraud claim, a
plaintiff must prove that (1) the defendant made a material representation that
was false; (2) the defendant knew the representation was false or made it
recklessly as a positive assertion without any knowledge of its truth; (3) the
defendant intended to induce the plaintiff to act upon the representation; and
(4) the plaintiff actually and justifiably relied on the representation, which
caused injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51
S.W.3d 573, 577 (Tex. 2001); Hartford Fire Ins. Co. v. C. Springs 300, Ltd.,
287 S.W.3d 771, 781 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  

          Prince attacks the figures
contained in the cash flow statement as inaccurate and false, and quotes verbatim
from his testimony concerning the calculations of mortgage loan interest,
penalty, and penalty interest listed in the statement.  The trial court found
that QAI did not make a material, false representation to Prince with respect
to any of these categories.  The record reveals that the trial court made those
findings by crediting the testimony of Arthur Kwok over the conflicting
testimony of Wayman Prince.  We may not disturb the trial court’s credibility
determinations.  See City of Keller, 168 S.W.3d at 819; HTS
Servs., 190 S.W.3d at 111.  As a result, we hold that factually sufficient
evidence supports the trial court’s take-nothing judgment on Prince’s
common-law fraud claim.  

CONCLUSION

 

          We conclude that Texas law
and the evidence support the trial court’s award of attorney’s fees to QAI.  We
further conclude that the evidence is factually sufficient to support the trial
court’s rejection of Prince’s common-law fraud claim.  We therefore affirm the
judgment of the trial court.  

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Massengale.

 

 









[1] 
In its appellate briefing, Prince also
challenged the enforceability of the cash flow statement under the statute of
frauds, but conceded this issue at oral argument.  We note that Prince did not
raise the statute of frauds as an affirmative defense in the trial court, nor
was the issue tried by consent.  See Tex.
R. Civ. P. 67, 92, 94; Double Ace, Inc. v. Pope, 190 S.W.3d 18,
28 (Tex. App.—Amarillo 2005, no pet.); Karbalai v. Solhjou, No.
01-01-00371-CV, 2003 WL 1848448, at *4 (Tex. App.—Houston [1st Dist.] 2003, no
pet.).  





[2] 
Prince admitted to the trial court that it had
not retained a CPA to perform the audit, but rather, Wayman Prince performed
the audit himself.