Opinion
issued June 16, 2011 

 

 

 

 

 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 
 


 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 


 
 

 
 



NO. 01-10-00528-CV

 


 
 

 
 



DALLAS NATIONAL INSURANCE COMPANY,
Appellant

 

V.

 

EDWINA LEWIS, INDIVIDUALLY AND AS REPRESENTAIVE OF THE
ESTATE OF BYRANT K. LEWIS, Appellee

 


 
 

 
 
 



On Appeal from the 165th District Court 

Harris County, Texas

Trial Court Cause No. 2007-20368

 


 
 

 
 
 



MEMORANDUM
OPINION

Appellant, Dallas National Insurance
Company (“Dallas National”), challenges the trial court’s judgment, entered after
a bench trial, in favor of appellee, Edwina Lewis, Individually and as Next
Friend of Bryant K. Lewis, reversing the decision of the Texas Department of
Insurance (“TDI”)—Division of Workers’ Compensation Commission appeals panel.  In two issues, Dallas National contends that
the evidence is legally and factually insufficient to support the trial court’s
finding that Bryant was not intoxicated at the time of his death and the trial
court “incorrectly lent weight” to “lay opinion” testimony to support its
judgment.        

We affirm.    

Background

          Bryant,
who worked the overnight shift as a shuttle bus driver and security guard at two
neighboring hotels in Houston, died in May 2004 when the shuttle bus that he
was driving caught fire.  Dallas National,
the workers’ compensation insurer, initially denied Lewis’s claim based upon
the allegation that Bryant’s death was caused by the criminal act of a third
person.  Dallas National abandoned this allegation,
but subsequently denied Lewis’s claim based upon the allegation that Bryant was
intoxicated at the time of his death.  Lewis
appealed the decision to the TDI appeals panel, which found that Bryant’s
“voluntary use of cocaine . . . deprived him of the normal use of his mental
[and] physical faculties” and Bryant “was intoxicated at the time of his
death.” 

Lewis then filed the underlying
lawsuit, seeking judicial review of the TDI appeals panel decision.  See
Tex. Lab. Code Ann. § 410.251
(Vernon Supp. 2010) (“A party that has exhausted its administrative remedies
under this subtitle and that is aggrieved by a final decision of the appeals
panel may seek judicial review . . . .”).  Lewis sought a judgment reversing the TDI
appeals panel’s findings that Bryant did not have the normal use of his mental
and physical faculties and was intoxicated at the time of his death.

          At
trial, Lewis presented the testimony of Bryant’s former co-worker Beatrice
Walker, expert witness Dr. Ernest Lykissa, and Dallas National’s representative
Francis Walsh.  Walker testified that she
worked the overnight shift as the “night auditor” at the same hotel as Bryant
on the evening of his death.  During this
shift, she observed or spoke with Bryant every ten to fifteen minutes.  On the evening of Bryant’s death, at
approximately 12:00 a.m., Walker had a cup of coffee with Bryant inside the
hotel, and the two engaged in personal conversation for thirty minutes, discussing
church, relationships, and jobs.  Walker
described Bryant’s mood as “uplifting,” and she noted that there was “nothing
abnormal” about his physical abilities.  Walker continued to observe and talk with
Bryant during the night as he was “coming back and forth,” and she also observed
his driving.  As Bryant was “making the
rounds in the shuttle bus” during the shfit, she would walk outside, and Bryant
would say “a few words” about where he was going.  At some point later, Bryant left to pick up
two elderly women from an airport.  Walker
noted that these two women had subsequently written letters to the hotel complimenting
Bryant’s manners and his treatment of them while driving them in the shuttle
bus.  

When asked how recently she had
spoken to Bryant before he was killed in the shuttle bus fire, Walker stated, 

Oh, it had to be right, — because like I said, we
were, we talked.   He come to the
door.  We talked at the door.  He says, I’m going to do my rounds . . .  This has to be the time that—right—I don’t
even know if it was ten or fifteen minutes, because when I received the phone .
. . call saying that there was a fire, a vehicle that was burning in the
parking lot, I automatically dialed Bryant back.  

 

She again confirmed that she had
spoken with and seen Bryant “ten to fifteen” minutes before the fire, although she
later said that the time frame could have been “fifteen or twenty” minutes.  Walker explained that there was nothing about
Bryant’s driving that evening that gained her attention.  He drove the shuttle bus in an ordinary
fashion, he did not seem to have any problems understanding instructions that
she had given him, and there was “no indication” that he was “not his normal
self” throughout the shift and before the fire.  Walker had also seen Bryant walking around the
hotel property twenty minutes before the fire, there was nothing peculiar about
the way he was walking, he did not have any “odd gestures,” he was cheerful,
laughing, and playing, and his “physical demeanor” was no different than usual.

Walker noted that it would have been
her responsibility to take care of any situation with an employee working while
intoxicated, she had the authority to take the keys away from a shuttle bus driver
like Bryant, and she had taken keys away from another shuttle driver on a prior
occasion.  She explained that she had no
reason to take away Bryant’s keys during the overnight shift and the night
auditor in the neighboring hotel did not contact her with any concerns about
Bryant’s conduct during the overnight shift.

Walker agreed that she had no medical
training, but she explained that she did have personal family experience in
recognizing individuals intoxicated by the use of alcohol and narcotics,
including cocaine.  She also stated that
she had observed Bryant at a close range during their conversation during the
shift and for periods of up to five minutes at a time when she stood outside
and watched Bryant walk the property.  Walker
noted that Bryant was not any more talkative than usual. 

Walsh, Dallas National’s
representative, testified that Dallas National originally denied Lewis’s claim
for workers’ compensation benefits because it believed that Bryant had been the
victim of a homicide.  He agreed that, at
the time Dallas National filed its first dispute of Bryant’s claim on the basis
of its homicide allegation, which had been fourteen days after Bryant’s death,
Dallas National had not obtained any evidence indicating that Bryant had lost the
normal use of his mental and physical faculties when he died.  Walsh reviewed the investigation file, which
indicated that Dal1as National’s investigator had interviewed three witnesses,
including Walker, after the fire. He agreed that there was no indication in the
file that any of the witnesses had reported that Bryant had lost the normal use
of his mental and physical faculties.  However,
Dallas National opined that Bryant had lost the normal use of his mental and
physical faculties when it received the medical examiner’s report indicating
that Bryant “was positive on cocaine.” 
Walsh agreed that Dallas National did not receive any statement from
anyone that Bryant was acting “weird” or abnormal at the time of his death.  

Dr. Lykissa testified that Bryant had
“used a small amount of cocaine” and “had some stimulation to the cocaine,
based on the pharmacologic effect of that kind of dose.”  Lykissa compared and contrasted cocaine use
and alcohol use.  When asked about
Walker’s testimony that Bryant did not seem to have any problems with his
physical or mental faculties during the shift in which he was killed, Lykissa
said that Walker’s observations of Bryant could be “consistent” with the amount
of cocaine that had been found in Bryant’s system.  Lykissa also stated that Bryant was “under
detrimental influence of cocaine at the time” of his death “because he had it
in his blood,” and he agreed that cocaine may negatively affect cognitive
abilities, but he also stated that Bryant had “greater than 95%” use “of the
control of his mental and physical faculties.” 
He subsequently opined that Bryant’s cognitive abilities “could have
been or not affected,” and he stated that he had “no indication whatsoever.”  Lykissa also noted that Bryant “was not perceived
by anybody to be out of the ordinary.” 
He conceded that he could not determine from a medical examiner’s report
the amount of cocaine that an individual has ingested and how recently it had been
ingested.

          The
trial court found that Bryant was “not intoxicated” and he had the normal use
of his mental and physical faculties at the time of his death.  The trial court reversed the decision of the
TDI appeals panel and subsequently entered findings of fact and conclusions of
law, stating that Bryant was within the scope of his employment at the time he
was driving the shuttle bus, he “had a trace of cocaine in his blood at the
time of his death,” he was “alert” and “had the normal use of his mental and
physical faculties” prior to his death, and he was not intoxicated at the time
of his death.

Standard of Review

In an appeal of a judgment rendered
after a nonjury trial, a trial court’s findings of fact have the same weight as
a jury’s verdict, and we review the legal and factual sufficiency of the evidence
used to support them just as we would review a jury’s findings.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Daniel v. Falcon Interest Realty Corp., 190 S.W.3d 177, 184 (Tex.
App.—Houston [1st Dist.] 2005, no pet.).  In conducting a legal sufficiency review of
the evidence, we must consider all of the evidence in the light most favorable
to the verdict and indulge every reasonable inference that would support it.  City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether
legally sufficient evidence supports the finding under review, we must consider
evidence favorable to the finding if a reasonable fact finder could consider
it, and disregard evidence contrary to the finding unless a reasonable
fact-finder could not disregard it.  Id. at 827; Brown v. Brown, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.]
2007, no pet.).

In reviewing a factual sufficiency
challenge, we consider and weigh all of the evidence supporting and
contradicting the challenged finding and set aside the finding only if the
evidence is so weak as to make the finding clearly wrong and manifestly unjust.
 Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); see Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  The trial court acts as fact-finder in a
bench trial and is the sole judge of the credibility of witnesses.  See
Murff v. Murff, 615 S.W.2d 696, 700 (Tex. 1981); HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190 S.W.3d 108,
111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

 

Legal and Factual Sufficiency

In its first and second issues,
Dallas National argues that the evidence is legally and factually insufficient
to support the trial court’s finding that Bryant was not intoxicated at the
time of his death because Dr. Lykissa’s “testimony was ambivalent at best” and the
trial court “incorrectly lent weight” to Walker’s “lay opinion.”[1]  Within its issues, Dallas National asserts
that Lykissa’s testimony was unreliable, conflicting, and lacked support in “any
scientific evidence or method,” and, thus, should be disregarded.  Dallas National argues that Walker’s
testimony constituted “character testimony having no relevance or forensic
value” because Walker had “no medical training” and she did not see Bryant
operate the shuttle bus “immediately before his death.”

The Texas Workers’ Compensation Act
provides that an insurance carrier is not liable for compensation if an
employee’s injury occurred while the employee was in a state of intoxication.  Tex.
Lab. Code Ann. § 406.032(1)(A) (Vernon Supp. 2010). “Intoxication” means
the state of “not having the normal use of mental or physical faculties
resulting from the voluntary introduction into the body of a controlled
substance or controlled substance analogue, as defined by Section 481.002,
Health and Safety Code.”[2]  Id.
§ 401.013(a)(2)(B); Tex. Health &
Safety Code Ann. § 481.002 (Vernon Supp. 2010).  A party pursuing judicial review of a final
decision of the appeals panel regarding compensability or eligibility for or
the amount of income or death benefits decision has the burden of proof by a
preponderance of the evidence.  Tex. Lab. Code Ann. §§ 410.301, 410.303
(Vernon Supp. 2010). 

In determining if a person has lost
the normal use of his physical or mental faculties, lay witnesses are competent
to offer testimony as to whether a person acted normally.  Am.
Interstate Ins. Co. v. Hinson, 172 S.W.3d 108, 117 (Tex. App.—Beaumont 2005,
pet. denied).  In Hinson, the Beaumont Court of Appeals rejected the argument made by
a workers’ compensation insurer, similar to that made here by Dallas National,
that expert testimony should be required on the issue of intoxication.  Id.  The court explained, 

[I]n a case of alcohol intoxication, in which the
State bases its theory on statutory language involving the normal use of mental
and physical faculties, we have held that expert evidence is not absolutely
required to establish diminished use of physical and mental faculties. The
rationale of that opinion is that abnormal behavior is observable, and that
non-experts are competent to provide testimony relevant to whether a person
acted abnormally. We believe the converse is also true, that normal behavior is
observable, and that non-experts are competent to provide testimony relevant to
whether a person acted normally.

 

Id.

Moreover, this Court has specifically
stated that “[i]n cases involving controlled substances, there is no level or
test defined by the statute that establishes per se if a person has lost use of
his or her physical and mental faculties.”  Tex. Mut. Ins. Co. v. Havard, No. 01-07-00268-CV, 2008 WL 598347,
at *3 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.) (citing Hinson, 172 S.W.3d at 115).  The statutory standard for intoxication by a
controlled substance like cocaine is “relatively subjective” because intoxication
is defined as “not having the normal use of mental or physical faculties” as a
result of one’s voluntarily use of the controlled substance.  Id.;
Tex. Lab. Code Ann. § 401.013(a)(2).
 As a result of the statutory definition of intoxication, the issue
in a compensation case involving the allegation of intoxication by a controlled
substance like cocaine is not whether the substance “was to some degree,
however slight, in the claimant’s body at the time of the accident,” but rather
whether the claimant was intoxicated at the time the accident occurred.  Hinson,
172 S.W.3d at 115.

The trial court could have reasonably
concluded that Walker was competent to testify regarding Bryant’s physical and
mental faculties during the overnight shift and in the minutes preceding his
death and her testimony was relevant on the issue of whether Bryant was
intoxicated.  Walker’s testimony supports
the trial court’s findings that Bryant was alert and possessed the normal use
of his physical and mental faculties at the time of his death.  The fact that Walker did not observe Bryant
at the exact minute of his death did not render Walker’s testimony
irrelevant.  The trial court, as the
fact-finder, was entitled to consider Walker’s observations of Bryant throughout
his shift, including her observations of him just minutes before his death, in
determining whether Bryant was intoxicated. 
See Havard, 2008 WL 598347, at *5 (noting that claimant’s evidence
included affidavit testimony from worker at facility where claimant was injured
stating that claimant did not appear intoxicated on day of accident).

Dr. Lykissa did testify, based upon
information in the medical examiner’s report, that Bryant had a “small amount”
of cocaine in his system.  However, Lykissa
further testified that the amount of cocaine found in Bryant’s system was
“consistent” with Walker’s observations of Bryant exhibiting normal behavior on
the night in question, including as recent as ten minutes before the fire.  Lykissa agreed that, based upon information
disclosed in the medical examiner’s report, he could not determine when Bryant had
ingested the cocaine, how much cocaine he had ingested, or how it affected
him.  And Lykissa noted that the cocaine
could or could not have affected Bryant’s cognitive abilities at the time of
his death.  However, although some of
Lykissa’s testimony on the general effects of cocaine might be considered
conflicting,[3] ultimately,
his testimony was consistent on the point that it was not possible for him to
determine from the information disclosed in the medical examiner’s report what
level of intoxication, if any, Bryant
suffered as a result of the ingestion of cocaine.[4]

Based upon Walker’s testimony that
Bryant exhibited normal behavior throughout the overnight shift and,
specifically, just minutes before his death, the trial court reasonably could
have found that Bryant had not lost the normal use of his physical and mental
faculties and was not intoxicated at the time of his death.  Accordingly, we hold that the evidence is
legally sufficient to support the trial court’s findings that Bryant “had the
normal use of his mental and physical faculties” and was not intoxicated at the
time of his death.  Moreover, even if we
were to consider the conflicting testimony offered by Dr. Lykissa on Bryant’s
intoxication, including his testimony that Bryant would have been stimulated
and was “under detrimental influence of cocaine at the time” of his death, we
cannot say that such evidence makes the trial court’s finding clearly wrong or
manifestly unjust.  Accordingly, we
further hold that the evidence is factually sufficient to support the trial
court’s findings that Bryant “had the normal use of his mental and physical
faculties” and was not intoxicated at the time of his death.

We overrule Dallas National’s first
and second issues.    

Conclusion

          We
affirm the judgment of the trial court.  

                                      

 

Terry Jennings

Justice

 

Panel consists of Justices Jennings, Bland,
and Massengale.











[1]           Both
of Dallas National’s issues fall within the scope of a traditional legal and
factual sufficiency challenge, and we address Dallas National’s issues
accordingly.

 





[2]               “On the voluntary introduction into the body of any
substance listed under Subsection (a)(2)(B), based on a blood test or
urinalysis, it is a rebuttable presumption that a person is intoxicated and
does not have the normal use of mental or physical faculties.”  Tex.
Lab. Code Ann. § 401.013(c).





[3]           Dallas National asserts,
contradictorily, that Dr. Lykissa’s testimony “established” that Bryant was
intoxicated and “[t]he only conclusion a reasonable mind could come to after
reading Dr. Lykissa’s testimony is that he really didn’t know if [Bryant] was
intoxicated or not at the time of his death.” 


 





[4]           Dallas
National states in its brief that Dr. Lykissa “actually testified” that
Bryant’s ingestion of cocaine affected his ability to get out of the shuttle
bus.  This is a mischaracterization of
the evidence.  Lykissa merely responded,
in response to Dallas National’s questioning, that the cocaine could or could
not have affected Bryant.  There is no
evidentiary support for the assertion that Bryant remained in the burning
shuttle bus as a result of his ingestion of cocaine. In fact, although there is
some evidence indicating that the gas tank of the shuttle bus exploded, there
is very little evidence pertaining to the fire and the condition of the bus or
Bryant following the explosion.