The STATE of Texas, Appellant,

v.

Louie ARNETT, Appellee.

No. 14330.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 16, 1964.

Rehearing Denied Jan. 13, 1965.

Wm. C. Church, Jr., James D. Baskin, Jr., San Antonio, Davis Grant, Austin, for appellant.

James C. Brady, Houston, for appellee.

MURRAY, Chief Justice.

This is a suit for reinstatement as an attorney by Louie Arnett, under the provisions of Art. XII, Sections 32 and 33, of the State Bar Rules, Art. 320a—1, Vernon's Ann.Civ.St. The State of Texas, acting by and through its Grievance Committee of the State Bar of Texas, contested the application of Arnett, and after a hearing before the District Court the petition of Louie Arnett was granted, and an order rendered reinstating him to the right to practice law in this State, from which judgment the State of Texas has prosecuted this appeal.

Appellee's petition for reinstatement was made under the provisions of Sec. 32 of the State Bar Rules, reading as follows:

"Section 32. Petition for Reinstatement after Disbarment

"At any time after the expiration of five years from the date of final judgment of disbarment of a member, he may petition the District Court of the county of his residence for reinstatement. The petition *shall allege in substance that petitioner at the time of filing is of good moral character, and since his disbarment, has been living a life of generally good conduct, and that he has made full amends and restitution to all persons, if any, naming them, who may have suffered pecuniary loss by reason of the misconduct for which he was disbarred.* The petition shall state the name and address of the Chairman of the District Grievance Committee and the name and address of the Secretary of the State Bar. (Emphasis added.)"

After hearing evidence, the trial court made the following findings of fact:

"FINDINGS OF FACT

"1. On August 15, 1956, petitioner Louie Arnett was disbarred by this Court.

"2. Petitioner has filed his petition for reinstatement under the provisions of Art. XII, Sec. 32 and Sec. 33 of the Rules Governing the State Bar of Texas, as promulgated by the Supreme Court of Texas.

"3. Petitioner at trial produced testimony of several members of the bar and other witnesses who testified in general concerning the good moral character of petitioner at this time, and that since his disbarment petitioner has been living a life of generally good conduct.

"4. Respondents produced evidence that petitioner had written two letters in 1963 for his brother on his old 'attorney-at-law' letterhead; however, testimony on behalf of petitioner and his secretary indicated that this may have been an oversight on the part of the secretary and that the words 'attorney-at-Law' should have been stricken from the letterhead. This Court had found petitioner guilty in February of 1959 of contempt of Court for writing a letter on his old letterhead, and fined him $10.00 and one day in jail.

"5. Respondents produced evidence that in 1957 petitioner took a false notarial certificate acting as a Notary Public; that although this remote act is not to be condoned, the Court nevertheless feels that it is probable that petitioner's future conduct as an attorney may be such as to never contravene the rights of others nor to violate the canons of ethics of the bar.

"6. A judgment for $12,270.50 was obtained by the Liquidator of the State Board of Insurance in 1955, by virtue of which judgment and execution, the State Receiver received a deed to four

(4) *lots* owned by petitioner, and credited the judgment in the sum of $2,000.-00 for same; petitioner testified that the four lots were worth considerably more than the amount credited, and that he considered them worth at least $10,000.00 today; no evidence to the contrary was offered by respondents.

"7. A release of this judgment against petitioner was introduced into evidence dated January 22, 1963; that this release recited that petitioner paid $1,000.00 at that time as a compromise settlement of the full amount due on the judgment; and that the Honorable John R. Grace, General Counsel for the Liquidation Division of the State Board of Insurance, who testified for respondents, stated that 'it was a pretty good settlement.' This would amount to a total of $3,000.00 actually credited to this judgment prior to its release, although evidence of the value of the property sold at execution was in excess of this amount was adduced.

"8. Petitioner's net worth just prior to the last payment to the State Liquidation Division of the $1,000.00 compromise settlement and release of judgment, was $951.22, consisting of a four year old automobile and some office furniture.

"9. One W. C. Brickey, Jr., president of the now defunct Pioneer Western Mutual Insurance Company, had obtained large sums of money totaling some $102,055.87, during which period petitioner received only a nominal salary.

"10. There is no evidence or testimony as to the amount of pecuniary loss suffered by any particular individual persons, other than the statement by Mr. Grace that there were over 10,000 policy holders and 475 general unsecured creditors, and that the net loss to them by the overall general operations of this defunct company was $374,991.16."

In the face of these findings we are unable to say that appellee has been living a life of generally good conduct since he was disbarred on August 15, 1956, and has made full amends and restitution to all persons who may have suffered pecuniary loss by reason of the misconduct for which he was disbarred. This is what the law requires before a person who has been disbarred can be reinstated. When a disbarred attorney applies for reinstatement to the status of a practicing attorney, the burden is upon him to show that he is entitled to be reinstated and is not upon the State to show the contrary.

Appellee cites Petition of Stalnaker, 150 Fla. 853, 9 So.2d 100, but that was a case in which the attorney had not been fully disbarred, he had only been suspended for one year, and furthermore, it is not shown that the statutes of Florida require such an applicant to allege that he has made full amends and restitution to all persons. This is a statutory requirement in Texas.

Appellee cites In re Andreani, 14 Cal.2d 736, 97 P.2d 456, for the proposition in restitution cases too great weight should not be placed upon the restitution of money misappropriated, but the Legislature of this State has made it a prerequisite to reinstatement. We do not know what the law in California is along this line. Re Harris, 88 N.J.L. 18, 95 A. 761, is cited for the statement, that "[w]ithout underestimating the importance of restitution * * * the mere circumstance of restitution is the one most likely * * * to depend upon conditions and circumstances that afford no reliable test of moral qualities." This may be true, but as we understand the Texas law it makes restitution a prerequisite to restoration of the privilege to practice law.

The right to practice the profession of law is a very great privilege, and where a person has abused such privilege to the extent that he has been permanently disbarred from the legal profession, he should not be reinstated unless he has strictly com-

plied with the provisions of the statutes and State Bar Rules relating to reinstatement.

Furthermore, the record shows that since appellee was disbarred he has been found guilty of contempt of court for writing a letter on his old letterhead and fined $10.00 and one day in jail, and that he has taken a false notarial certificate while acting as a Notary Public.

The judgment of the trial court is reversed and judgment here rendered refusing appellee's application for reinstatement as an attorney.