**Opinion issued February 25, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00429-CV

————————————

**MIKEL PETER EGGERT, Appellant**

**V.**

**THE STATE BAR OF TEXAS, Appellee**

On Appeal from the 425th Judicial District Court
Williamson County, Texas[1]

Trial Court Case No. 18-1326-C425

**O P I N I O N**

---

[1]     The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

This is an appeal from an order denying Mikel Peter Eggert's petition to reinstate his license to practice law in the State of Texas. We affirm.

## Background

### Criminal Conviction, Suspension, and Disbarment

Eggert was licensed to practice law in Pennsylvania and the Northern District of Texas in 2004. The following year, Eggert moved to Texas and worked with his father at his father's law practice. A jury found Eggert guilty of a state jail felony for conspiring to tamper with or fabricate physical evidence. *See* TEX. PENAL CODE § 37.09. The trial court sentenced Eggert to five years' probation. Eggert appealed his conviction, and the appellate court affirmed the trial court's judgment.[2]

The Texas Board of Disciplinary Appeals suspended Eggert's license to practice law. Later, the Texas Board of Disciplinary Appeals disbarred Eggert as a result of his felony conviction. Eggert has not practiced law since December 2005. In March 2013, Eggert completed probation.

### Petition to Reinstate Eggert's License to Practice Law

In 2018, Eggert filed a verified petition to reinstate his license to practice law in the State of Texas. *See* TEX. R. DISCIPLINARY P. 11.02. The trial court held a bench trial on Eggert's petition. Eggert called four character witnesses and one

---

[2] *See Eggert v. State*, No. 11-05-00227-CR, 2007 WL 1644061 (Tex. App.— Eastland June 7, 2007, pet. ref'd) (per curiam, not designated for publication).

2

expert witness to testify about his character, conduct, and skills as an attorney. Eggert also testified. The State Bar of Texas did not call any witnesses to testify.

After the bench trial, the trial court denied Eggert's petition for reinstatement. Eggert requested findings of fact and conclusions of law, and the trial court requested from each party proposed findings of fact and conclusions of law. Eggert and the State Bar of Texas complied.

### *Findings of Fact and Conclusions of Law*

The trial court issued its findings of fact and conclusions of law. The findings of fact that Eggert does not dispute follow. The Board of Disciplinary Appeals did not find that Eggert had caused any financial loss to any person or entity. The Board of Disciplinary Appeals assessed no fines or costs against Eggert as part of "the Attorney Disciplinary Action." Eggert was not the subject of any action in which restitution was ordered. Eggert has never been a defendant in a criminal case other than the case that led to his disbarment. Finally, no formal or informal allegations or charges of fraud have been made against Eggert since his disbarment or at any time before.

The trial court made additional findings of fact that Eggert does challenge on appeal. These findings of fact include:

* * * *

3

16. Eggert failed to demonstrate appropriate remorse or understanding of the seriousness of the nature of the acts for which he was disbarred.

17. Eggert failed to demonstrate a positive attitude toward the administration of justice and the practice of law.

18. Eggert failed to show that he has reasonably thought out and established a strategic business plan for his entry back into the practice of law.

19. Eggert's reinstatement is not in the best interests of the public or the profession, nor would it serve the ends of justice.

The trial court made four conclusions of law:

1. Eggert timely filed his First Amended Petition for Reinstatement seeking reinstatement to the practice of law in the State of Texas.

2. Eggert is procedurally eligible for reinstatement of his law license, pursuant to Part XI of the Texas Rules of Disciplinary Procedure.

3. Eggert failed to meet his burden of proof that the best interests of the public and the profession, as well as the ends of justice, would be served by his reinstatement.

4. In the event any finding of fact is determined to constitute conclusion of law, it shall be treated as a conclusion of law. In the event any conclusion of law is determined to constitute a finding of fact, it shall be treated as a finding of fact.

Eggert appealed to challenge the trial court's ruling.

4

**Reinstatement**

## A.     Applicable law

The Rules of Disciplinary Procedure govern the process and procedures for reinstatement after disbarment. TEX. R. DISCIPLINARY P. 11.01–11.08. A person must file a verified petition in the district court containing, among other things, "[a] statement that at the time of the filing of the petition, the petitioner is of good moral character, possesses the mental and emotional fitness to practice law, and during the five years immediately preceding the filing of the petition, has been living a life of exemplary conduct." *Id.* 11.02(E). The petitioner must serve notice of the petition for reinstatement on the State Bar's Chief Disciplinary Counsel and publish notice as a paid classified announcement in the *Texas Bar Journal. Id.* 11.04. The rules further provide that the "petitioner has the burden of establishing by a preponderance of the evidence that the best interests of the public and the profession, as well as the ends of justice, would be served by his or her reinstatement." *Id*. 11.03. The rules require the trial court to "deny the petition for reinstatement . . . if the petitioner fails to meet the burden of proof." *Id*.

In determining whether a petitioner should be reinstated to the practice of law, the trial court may consider, among any other relevant factors, the nature and degree of misconduct for which the petitioner was disbarred or resigned and the circumstances attending the misconduct; the petitioner's understanding of the

5

serious nature of the acts for which he was disbarred or resigned; the petitioner's conduct during the disciplinary proceeding; the profit to the petitioner and the hardship to others due to the misconduct; the petitioner's attitude toward the administration of justice and the practice of law; the petitioner's good works and other accomplishments; and any other evidence relevant to the issues of the petitioner's fitness to practice law and the likelihood the petitioner will not engage in future misconduct. *Id*. 11.05. The rules provide relief to a petitioner who meets his burden:

> If the court is satisfied after hearing all the evidence, both in support and in opposition to the petition, that the material allegations of the petition are true and that the best interests of the public and the profession, as well as the ends of justice, will be served, the court *may* render judgment authorizing the petitioner to be reinstated upon his or her compliance within eighteen months from the date of the judgment with Rule II of the Rules Governing Admission to the Bar of Texas in effect as of the date upon which judgment authorizing reinstatement is entered. . . . If after hearing all the evidence the court determines that the petitioner is not eligible for reinstatement, the court *may*, in its discretion, either enter a judgment denying the petition or direct that the petition be held in abeyance for a reasonable period of time until the petitioner provides additional proof that he or she has satisfied the requirements of these rules.

*Id*. 11.06 (emphasis added).

Per Rule 11.06, the trial court *may* grant or deny a petition for reinstatement. *See id*. A statute that uses the word "may" is permissive rather than mandatory unless there is something in the statute to show a legislative intent that "may" is mandatory. *See Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 874 (Tex.

6

2005); *Buttles v. Navarro*, 766 S.W.2d 893, 894 (Tex. App.—San Antonio 1989, no writ) (noting that the word "may" should be given its permissive meaning). "A permissive statute gives a trial court discretion to decide under the framework of the statute." *J.R.W. v. State*, 879 S.W.2d 254, 257 (Tex. App.—Dallas 1994, no writ). Thus, the trial court's determination whether to grant a petition to reinstate under Rule 11.06 is discretionary.

**B.    Standard of review**

Under abuse-of-discretion review, we "defer to the trial court's factual determinations if they are supported by evidence, but review its legal determinations de novo." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). We reverse the trial court's ruling only if it has acted in an unreasonable or arbitrary manner. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). We may not reverse for an abuse of discretion merely because we disagree with the trial court's decision; we must affirm so long as the decision is within the trial court's discretionary authority. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). To determine whether there is an abuse of discretion, we review the entire record to determine if the trial court acted without reference to any guiding rules and principles. *See Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 371 (Tex. 2014).

When an appellate court reviews a trial court's ruling for which the trial court was given discretion, legal and factual sufficiency challenges are not independent grounds for asserting error, but they are relevant factors in determining whether the trial court abused its discretion. *Buller*, 806 S.W.2d at 226 (discretionary determination whether to issue order for turnover relief); *Halsey v. Halter*, 486 S.W.3d 184, 187 (Tex. App.—Dallas 2016, no pet.) (mem. op.) (discretionary determination whether to grant or deny attorney's fees). An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence supports the trial court's decision. *Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998); *Urquhart v. Calkins*, No. 01-17-00256-CV, 2018 WL 3352919, at *2 (Tex. App.—Houston [1st Dist.] July 10, 2018, pet. filed) (mem. op.). The party claiming an abuse of discretion has the burden on appeal to show it. *City of Houston v. Woods*, 138 S.W.3d 574, 580 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Simon v. York Crane & Rigging Co., Inc.*, 739 S.W.2d 793, 795 (Tex. 1987)). This involves a two-pronged inquiry: (1) whether the trial court had sufficient evidence on which to exercise its discretion, and (2) if so, whether the trial court erred in its application of that discretion. *City of Houston v. Kallinen*, 516 S.W.3d 617, 626 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Determinations of credibility are left to the trial court as the factfinder in a bench trial, not the appellate court. *See HTS Servs., Inc. v. Hallwood Realty*

8

*Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (trial court as factfinder is sole judge of credibility and appellate court may not pass upon credibility or substitute its judgment for that of trial court).

## C.    Challenge to conclusion of law

Eggert challenges the third Conclusion of Law, which states, "Eggert failed to meet his burden of proof that the best interest of the public and the profession, as well as the ends of justice, would be served by his reinstatement." He first presents his argument as a complaint that the trial court misapplied law by relying on *Landerman v. State Bar of Texas*, 247 S.W.3d 426 (Tex. App.—Dallas 2008, pet. denied), and *State of Texas v. Arnett*, 385 S.W.2d 452 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.). Eggert argues that *Landerman* is distinguishable because he had not engaged in fraudulent behavior and had no disciplinary history before his conviction and disbarment. Similarly, he argues that *Arnett* is distinguishable because he has "strictly complied with all procedural requirements" for reinstatement and "neither owed restitution nor caused financial loss to any person or entity."

The *Landerman* and *Arnett* references were made in a letter the trial court issued to counsel detailing the reasons for denying Eggert's reinstatement petition. The letter states, in part, that:

> The Court finds that Mr. Eggert must prove by a preponderance of the evidence that the material allegations in the petition are true and his

reinstatement would serve the best interest of the public and profession, as well as the interest of justice. Tex. R. Disciplinary P. 11.03. *See also*, *Landerman v. State Bar of Texas*, 247 S.W.3d 426 (2008).

"*The right to practice the profession of law is a very great privilege*, and where a person has abused such privilege to the extent that he has been permanently disbarred from the legal profession, he should not be reinstated unless he has strictly complied with the provisions of the statutes and State Bar Rules relating to reinstatement." *State v. Arnett*, 385 S.W.2d 452 (1964).

I find that Mr. Eggert did not meet his burden of establishing by a preponderance of the evidence that the material allegations in the petition are true and the best interests of the public and the profession, as well as the ends of justice, would be served by his reinstatement. The Court therefore denies Mr. Eggert's petition for reinstatement.

Rule 11.03 of the Texas Rules of Disciplinary Procedure governs the burden that Eggert must shoulder to successfully petition to reinstate his license to practice law. *Landerman* recites the same burden. 247 S.W.3d at 432 ("Before the trial court may grant reinstatement, the petitioner must prove by a preponderance of the evidence that the material allegations in the petition are true and his reinstatement would serve the best interests of the public and profession, as well as the interest of justice."). The trial court did not reference *Landerman* as part of a comparative analysis of the degree of fraudulent behavior or extensive disciplinary history at issue. Indeed, the trial court found that "[n]o allegations or charges of fraud, formal or informal, have been made against Eggert since his disbarment or at any time before." And all parties agree that Eggert has not had any disciplinary actions

10

against him other than the complaint that led to his disbarment. The trial court's citation to *Landerman* only identifies the applicable burden for reinstatement.

Likewise, the trial court's reference to *Arnett* was merely to announce the framework of the issue before the trial court. The trial court underlined the text it quoted from *Arnett*, "The right to practice the profession of law is a very great privilege." Other cases have stated the same. *See Love v. State Bar of Tex.*, 982 S.W.2d 939, 945 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citation omitted) ("[T]he right to practice law is a very great privilege. With this privilege comes an equal dose of responsibility."). The trial court did not reference *Arnett* as part of a comparative analysis in evaluating the facts of Eggert's petition. Neither party disputes that Eggert strictly complied with the requirements outlined in Rule 11.02, such as addressing whether he "made restitution to all persons," whether he caused "financial loss" to any person or entity, or whether "any allegations or charges, formal or informal, of fraud were made or claimed against" him. *See* TEX. R. DISCIPLINARY P. 11.02(D), (M).

Eggert misconstrues the trial court's reliance on *Landerman* and *Arnett*. There is no indication in the record that the trial court weighed the evidence against that found in *Landerman* and *Arnett* to reach its conclusions or that it misapplied its discretion by citing to these cases for these two propositions. Pointing out factual differences between *Landerman* and *Arnett* does not remove

11

the trial court's ruling from the zone of reasonable disagreement. *See Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 7 (Tex. 2015).

In addition to his challenge to the trial court's application of *Landerman* and *Arnett*, Eggert contends that trial court is "bound by" the testimony of his expert— former Justice David Richards, his appellate attorney in the criminal case. Mr. Richards testified that Eggert's reinstatement would "serve the interest of justice" and that Eggert "would actually be an asset to the State Bar" if reinstated. Richards further testified that Eggert "would make a good lawyer that is not going to ever be involved in conduct like this again." Finally, he opined that "the State Bar would be proud" of Eggert.

The trial court as trier of fact was the exclusive judge of the witnesses' credibility and the weight to be given their testimony. *Hallwood Realty Partners, L.P.*, 190 S.W.3d at 111; *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.— Dallas 1997, no writ). When presented with conflicting evidence, the factfinder may believe one witness and disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Guimaraes v. Brann*, 562 S.W.3d 521, 549 (Tex. App.—Houston [1st Dist.] July 24, 2018). Expert opinion testimony, even if uncontroverted, is not conclusive on the trier of fact, unless the subject is one for experts alone. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex. 1998). We conclude the trial court was in the best position to judge the evidence.

After considering all the evidence, the trial court reasonably could have determined these issues against Eggert, contrary to his expert's opinion testimony. *Broussard v. Moon*, 431 S.W.2d 534, 537 (Tex. 1968) (explaining that witness's qualification as an expert does not preclude factfinder from exercising considerable discretion in determining degree of reliance to afford expert's opinion); *see also Kuhlmann*, 722 S.W.2d 694 at 697 (explaining that factfinder who is evaluating expert testimony has considerable discretion and may reject expert testimony and accept other evidence); *Olin Corp. v. Smith*, 990 S.W.2d 789, 797 (Tex. App.—Austin 1999, pet. denied) ("Opinion testimony does not establish any material fact as a matter of law and is never binding on the trier of fact.").

Because this expert's opinion testimony was not conclusive and because the trial court is the sole judge of a witness's credibility, *see Gunn v. McCoy*, 554 S.W.3d 645, 665 (Tex. 2018), we hold that the trial court had sufficient evidence to exercise its discretion and did not abuse its discretion in determining these issues contrary to Richards's position. Even if Richards provided *some* evidence to show that reinstatement would be in the best interest of the public and the profession, as well as the ends of justice, Eggert did not demonstrate that the trial court erred in its application of its discretion in concluding otherwise. *Kallinen*, 516 S.W.3d at 626.

## D.    Challenge to findings of fact

Eggert challenges four findings of fact, but we need only address three.[3] First, Eggert argues that no evidence supported the trial court's finding on Eggert's lack of remorse or understanding of the seriousness of the criminal conviction that caused his disbarment. Eggert points to his testimony in the reinstatement hearing. Eggert stated:

> I made those mistakes. I made those errors of judgment. I can sit up here and I really don't want anyone to think that I'm sitting up here and blaming someone else for my mistakes. I was the one that made those errors but that was fifteen years ago. I served my time. I never had any problems doing that.

Other witnesses testified about Eggert's remorse. Mr. Richards testified Eggert "deeply regretted his conduct." D. Deason, Eggert's law school friend, testified that Eggert did not try to blame anybody for his actions.

In response, the State Bar of Texas contends that Eggert did not show appropriate remorse or understanding of the seriousness of the nature of the acts for which he was disbarred because he "continued to deny his role in the efforts to get two witnesses to sign false affidavits," "continued to deny his knowledge that

---

[3]    The trial court's fourth Conclusion of Law states, in part, that "In the event any finding of fact is determined to constitute conclusion of law, it shall be treated as a conclusion of law." Accordingly, we construe and adopt Finding of Fact number 19—Eggert's reinstatement is not in the best interests of the public or the profession, nor would it serve the ends of justice—as a conclusion of law. Because we have already addressed this particular conclusion of law above, we need not consider Eggert's arguments regarding the nineteenth Finding of Fact.

the information contained in the affidavits he drafted was" false, and attributed a "majority of the blame" to his father as the culpable party.[4]

One of the factors the trial court may consider in determining Eggert's fitness for reinstatement is his understanding of the serious nature of the acts for which he was disbarred. *See* TEX. R. DISCIPLINARY P. 11.05(B). And the trial court was entitled to believe or disbelieve any or all of Eggert's testimony. *Ramirez v. State*, 44 S.W.3d 107, 109 (Tex. App.—Austin 2001, no pet.). For example, the trial court could have disbelieved that Eggert was being "naïve" in trusting and relying on his father's directions.[5] The trial court reasonably could have

---

[4]    When asked whether he thought his father was to blame for the majority of the actions that led to his own conviction, Eggert explained:

> That's a sorted [sic] question. I would like to—yes, no, you know? I'm the first—the people that know me will tell you I'm the first to take blame for everything, it's just kind of how it is. But, yeah, if I had to sit up here and say he typed the affidavit, my father, he met with the witnesses, he roweled up the local attorneys. If I were to say that he was the majority of the blame, yes, ma'am, but I don't want you to think that I'm not, that I'm not taking the blame, that I'm pushing off all this on him. No, I was a grown man then and I'm a grown man now and those errors will haunt me forever.

[5]    When asked why he did not stop his father from engaging in unlawful behavior, Eggert explained:

> That was another mistake that I made on my part. There were a couple reasons why I didn't stop him. Looking back, it's easier. At the time, who doesn't—at least I trusted my father. Who doesn't trust their dad? Even though he's a particular type of man, I still trusted him and I didn't think. I really didn't think but the other reason really I think is important is I wasn't Texas licensed so I wasn't heading up that part of the case, I was heading up the

15

determined that Eggert was not taking sufficient responsibility for his actions because he repeatedly shifted blame to his father as the mastermind. The trial court, as the trier of fact, had the ability to evaluate the credibility of the witnesses and assign weight to the witnesses' testimony, and we conclude that the trial court's determination fell within the zone of reasonable disagreement. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

Second, Eggert argues that no evidence supported the trial court's finding that he failed to show a positive attitude toward the administration of justice and the practice of law. Rule 11.05(E) states that "the trial court may consider [t]he petitioner's attitude toward the administration of justice and the practice law." TEX. R. DISCIPLINARY P. 11.05(E). The State Bar of Texas contends that there is ample evidence to support the finding that Eggert did not meet his burden for this factor. When Eggert was asked whether he had learned any lessons, he responded that the lesson he learned was "don't practice law in a small town." Although Eggert concedes that he made this statement at his disciplinary hearing, he explains that he made this statement because he was "hurt" and "upset." The trial court reasonably

immigration matter. Now, with that being said, I was still involved and so at the time I felt like do I control my dad? This is my dad so do I have to control him? Do I have to reel him in? What do I do? I went with, in retrospect, a real naive tact [sic] which was just believing that what he was finding and what he was telling me was in fact true.

could have found that Eggert's statement supports a determination that Eggert's attitude toward the administration of justice and the practice of law is not positive. Thus, the trial court's determination did not fall outside the zone of reasonable disagreement. *Wilson*, 168 S.W.3d at 822.

Finally, Eggert asserts that no evidence supported the trial court's finding that he failed to show that he has reasonably thought out and established a strategic business plan for his entry back into the practice of law. He specifically asserts that he was never asked to testify about a strategic business plan for reentry into the practice of law. In response, the State Bar of Texas argues that Eggert's plans for reentry were not concrete. According to the State Bar of Texas, Eggert "had not formed any real impressions as to what kind of law he wished to practice."

A trial court's ruling whether to grant a petition to reinstate is guided by a non-exclusive list of factors found in the Disciplinary Rules. The trial court may consider "[a]ny other evidence relevant to the issues of the petitioner's fitness to practice law and the likelihood that the petitioner will not engage in further misconduct." TEX. R. DISCIPLINARY P. 11.05(G). Eggert's plans for reentry to the practice of law reasonably could be viewed as relevant to the trial court's determination.

The State Bar of Texas questioned Eggert about his future in the practice of law:

17

[State Bar]:        If you do get reinstated, what type of law do
                    you plan on practicing?

[Eggert]:           I'll try to do one step at a time. I'm hopeful, you
                    know? I don't know if it's a good answer to say I
                    don't know. There's so many—there's a lot of
                    different facets of law I'd like to get involved in if
                    I could get to that stage but off the top of my head
                    I can say I'm not married to any particular type of
                    law that I'd like to be able—this is in the event that
                    I would be able to be reinstated but I would like—I
                    wouldn't mind . . . I enjoy helping people in family
                    law cases. Not to sound weird but uncontested
                    divorces were pretty easy cases and I enjoyed it. I
                    enjoyed helping people in the custody matters and
                    it's not to say that I would go back into that, I
                    don't even know that I could go back into that at
                    this point but to answer your question if it helps
                    any, I would probably steer away from corporate
                    and criminal and that type of law and maybe get
                    more towards personal type of law dealing with
                    people but I don't—I can't answer exactly because
                    I don't know. I don't know that I've gotten that far.

[State Bar]:        Would it be your wish to go solo?

[Eggert]:           I don't know that I could, I don't know that I can. I
                    think I'd rather have somebody—I think I'd rather
                    work for somebody. I don't know that I could do
                    that either, you know? I think I'd want to be taken
                    under a wing as opposed to trying to figure it out
                    for myself. I think I would put myself in a bad
                    situation again and I wouldn't want to do that so I
                    don't know yet.

The trial court reasonably could have determined, on this evidence, that Eggert

failed to show that he has reasonably thought out and established a strategic

business plan for his reentry to the practice of law and that these failures counseled

18

against a determination that his reinstatement would serve the best interests of the public and the profession, as well as the ends of justice. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). Because the trial court's ruling was at least within the zone of reasonable disagreement, there is no abuse of discretion.

Having determined that the trial court had sufficient evidence on which to exercise its discretion, and having determined that its application of its discretion was within the zone of reasonable disagreement, we conclude the trial court did not abuse its discretion in denying Eggert's petition to reinstate. *Kallinen*, 516 S.W.3d at 626; *Matak*, 462 S.W.3d at 7. We overrule Eggert's issues.

## Conclusion

We affirm the trial court's order.

Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Countiss.

19