# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00516-CV

---

**Augustin Rivera, Jr.; Teresa Ereon Giltner; Harold Odom;
Barbara Ellis; Anna M. McKim; Cynthia Eva Hujar Orr; C. Alfred MacKenzie;
Dwaine M. Massey; and Carlos R. Soltero, in their Official Capacities as
Members of the Texas Board of Law Examiners, Appellants**

**v.**

**Deborah Sonnenschein, Appellee**

---

**FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-20-007210, THE HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Deborah Sonnenschein sued the members of the Texas Board of Law Examiners

(Board Members)[1] in their official capacities after the Board denied her request for admission to

the Texas Bar without taking the bar examination. Sonnenschein asserted ultra vires claims

against the Board Members, who filed a plea to the jurisdiction arguing that the trial court lacked

subject-matter jurisdiction over the suit. The trial court denied the plea, and the Board Members

appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (permitting interlocutory appeal of

grant or denial of governmental unit's plea to jurisdiction); *Texas A & M Univ. Sys. v. Koseoglu*,

233 S.W.3d 835, 845 (Tex. 2007) (holding that "governmental unit" in Section 51.014(a)(8)

---

[1] The Board Members are Augustin Rivera, Jr., Teresa Ereon Giltner, Harold Odom,
Barbara Ellis, Anna M. McKim, Cynthia Eva Hujar Orr, C. Alfred MacKenzie, Dwaine M.
Massey, and Carlos R. Soltero.

includes governmental official sued in official capacity).  For the following reasons, we will reverse the trial court's order and render judgment dismissing Sonnenschein's claims except those alleging violations of her rights to equal protection, which claims we remand to the trial court to allow Sonnenschein an opportunity to amend her pleadings to allege sufficient facts to support them.

**BACKGROUND**

In her live petition, Sonnenschein alleged that in 2012 she earned a J.D. degree from Northwestern California University (NWCU) School of Law, a non-ABA-approved law school that was "registered and regulated" by the State Bar of California although not "accredited" by that state.  The California Bar nonetheless authorized NWCU law-school graduates to sit for the California Bar Exam after successfully passing the state's First-Year Law Students' Examination and completing a four-year course of study.  After graduating, Sonnenschein passed the California Bar Exam on her first effort and obtained a California law license in December 2012.

The Massachusetts Board of Bar Examiners permitted Sonnenschein to take the February 2013 Massachusetts Bar Exam by waiving its requirement that applicants be graduates of law schools that are either ABA-approved or authorized by the Commonwealth of Massachusetts.  Sonnenschein passed that exam on her first attempt and obtained a Massachusetts law license in June 2013.  Thereafter, Sonnenschein and her husband (also an attorney) established a Massachusetts law firm and practiced law for more than five years.

In late 2018, the Sonnenscheins moved to Texas and, since Spring 2019, have been providing pro bono legal representation to low-income Texas clients via Volunteer Legal

Services of Central Texas, as authorized by the Texas State Bar under its New Opportunities Volunteer Attorney (NOVA) pro bono program for attorneys licensed in other states.

In April 2019, Sonnenschein submitted to the Board an application to be admitted to the Texas Bar without examination (commonly called an AWOX application) pursuant to Rule 13, Section 1 of the Rules Governing Admission to the Bar of Texas (Rules), which then provided:

> An Applicant who is authorized to practice law in another state must meet the requirements imposed on any other Applicant under these Rules, except that the Applicant is exempt from the requirement of successfully completing the Texas Bar Examination if the Applicant:
>
> (a) has been actively and substantially engaged in the lawful practice of law as the Applicant's principal business or occupation for at least five of the last seven years immediately preceding the filing of the Application;
>
> (b) has a J.D. degree from an approved law school; and
>
> (c) has not failed the Texas Bar Examination.

Tex. Rules Govern. Bar Adm'n 13, § 1 (Sept. 8, 2017), *amended eff.* Dec. 1, 2019. In August 2019, the Board declared Sonnenschein's AWOX application ineligible because she did not meet Rule 13, Section 1(b)'s requirement that she have a J.D. degree from an ABA-approved law school (the law-study requirement). *See id.* R. 1(a)(4) (defining "approved law school" as "a law school approved by the American Bar Association"). Shortly thereafter, Sonnenschein requested, under Rule 20, that the Board waive the law-study requirement for her AWOX application and provided documentation and a memo to support the waiver, including a reference to a "similarly situated applicant" who in 2017 was granted "essentially the same waiver" and admitted to the Bar. *See id.* R. 20(e) (granting Board "discretion in the interpretation and application of these Rules" and providing that for "good cause shown to the satisfaction of the

3

Board," "waivers of specific requirements described in these Rules may be granted, unless it appears therefrom that no exceptions are contemplated by the Supreme Court"). The Board informed Sonnenschein that her waiver request would be considered at a public meeting in September 2019.

At the public meeting, before a three-member panel considering waiver requests, Sonnenschein (who is Black) and her husband (who is White) appeared and spoke in support of their similar requests.[2] Later that month, the Board issued its final decision denying Sonnenschein's waiver request and terminating her AWOX application. Sonnenschein filed a motion for rehearing with the Board, "in the erroneous belief that the Board was subject to the Texas Administrative Procedure Act ('APA')." In October 2019, the Board's Executive Director sent Sonnenschein a Summary Letter explaining why she did not qualify for admission without taking the bar examination under Rule 13—because "the JD [she] earned at an unaccredited on-line school does not satisfy the education requirements" of the rule. In the letter, the Board explained that it had not yet developed AWOX waiver-request licensing guidelines mandated by Texas Government Code Section 82.039; that it was not subject to the APA; that its decision was "final and unappealable"; and that even under the impending revised rules (effective December 1, 2019), Sonnenschein would not meet the law-study requirement to take the Texas bar exam because NWCU's law school, while "state-authorized," was not "state-accredited" and, in any event, was an online law school. *See id.* R. 13, §§ 2 (providing exemption from Rule 3's law-study requirement for applicant authorized to practice law in another state who holds

---

[2] Sonnenschein's husband, Dr. Alexander Sonnenschein, Ph.D.—who is not a party to this lawsuit—also requested a waiver of the law-study requirement in support of his AWOX application. After the Board denied his AWOX application, he filed a separate but similar suit against the Board Members. His appeal of the trial court's grant of the Board Members' plea to the jurisdiction in that lawsuit is pending before this Court in cause number 03-21-00602-CV.

4

J.D. "from an unapproved law school that is accredited in the state where it is located"), 5 ("No Degree by Correspondence").

Sonnenschein brought ultra vires claims against the Board Members for allegedly violating Government Code Section 82.039, Texas Civil Practice and Remedies Code Section 106.001(1), and her Texas constitutional rights to equal protection and procedural and substantive due course of law.[3] She sought declaratory judgments—including that graduates of law schools such as NWCU's be treated by the Board as "on par with graduates of state-accredited law schools from other jurisdictions"—and injunctive relief requiring the Board to develop specific guidelines for granting AWOX waiver requests and to approve her AWOX application. The trial court denied the Board Members' plea to the jurisdiction after a hearing at which it admitted into evidence several of Sonnenschein's exhibits.[4] Those included her AWOX application materials and correspondence with the Board, copies of the Rules, correspondence confirming her acceptance into the NOVA program, and Board-meeting minutes. In her correspondence with the Board, Sonnenschein explained that NWCU Law School "is a California-registered, unaccredited correspondence law school" and that "most of the interactions at NWCU were via the internet."

---

[3] Although Sonnenschein did not use the phrase "ultra vires" in her petition, she cited *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009), in support of the trial court's jurisdiction. That case explained that ultra vires suits seeking to compel officials to comply with statutory or constitutional provisions or asserting that officials acted without legal authority or failed to perform a purely ministerial act are not barred by sovereign immunity. *See id.* at 372.

[4] The trial court granted the Board Members' plea as to two other defendants—the Board's former Executive Director and former Eligibility Director—but Sonnenschein does not appeal the dismissal of her claims against those parties.

5

**DISCUSSION**

We review the trial court's denial of the Board Members' plea to the jurisdiction de novo. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex. 2018).

*Due-course-of-law claims*

In her first two causes of action, Sonnenschein alleges that the Board Members violated her Texas constitutional rights to substantive and procedural due course of law in the pursuit of her "liberty interest to practice her profession."[5]  *See* Tex. Const. art. I, §§ 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land."), 29 (providing that Bill of Rights (Sections 1–35) "shall forever remain inviolate" and all laws contrary thereto "shall be void"); *Su Inn Ho v. University of Tex. at Arlington*, 984 S.W.2d 672, 683 (Tex. App.— Amarillo 1998, pet. denied) (noting that substantive component of due-course-of-law guarantee protects citizens from state action that arbitrarily or capriciously deprives them of interest in life, liberty, or property).  However, as the Board Members argued in their plea to the jurisdiction, before due-process rights attach, a citizen must identify the liberty or property interest that is entitled to constitutional protection.  *See Honors Acad. Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018).

---

[5] In her petition, Sonnenschein specifies that she "only alleges state law claims" and "specifically excludes . . . any federal cause of action" including those arising under the federal Constitution.  We note that Texas courts evaluate equal-protection challenges under the Texas Constitution using the same standard for equal-protection challenges brought under the federal Constitution, *see Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002), and due-course-of-law claims under the Texas Constitution using the same standard applied to due-process claims under the federal Constitution, *University of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

6

Sonnenschein failed to identify any legally protected liberty or property interest in her petition or response to the Board Members' plea to the jurisdiction and has failed on appeal to cite any authority supporting her contention that she has a constitutionally protected interest in obtaining a Texas law license. Rather, she has no right—liberty or otherwise—to be admitted to the Texas Bar except in conformity with the Supreme Court's Rules. *See* Tex. Gov't Code §§ 82.001 ("The supreme court shall appoint the members of the [B]oard."), .004 ("The Board, acting under instructions of the supreme court as provided by this chapter, shall determine the eligibility of candidates for examination for a license to practice law in this state . . . [and] shall examine each eligible candidate as to the candidate's qualifications to practice law."), .021 ("Only the supreme court may issue licenses to practice law in this state as provided by this chapter. The power may not be delegated."), .022 ("The supreme court may adopt rules on eligibility for examination for a license to practice law . . . ."). Unlike common occupations that are not regulated, the practice of law is a profession and a privilege that the United States Supreme Court has identified as one for which a state "can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar." *See Schware v. Board of Bar Exam'rs of State of N.M.*, 353 U.S. 232, 239 (1957); *see also Hankamer v. Templin*, 187 S.W.2d 549, 551 (Tex. 1945) ("[T]he right to practice law is not a personal right, but a franchise, or privilege[.]"); *State v. Arnett*, 385 S.W.2d 452, 454 (Tex. App.—San Antonio 1964, writ ref'd n.r.e.) ("The right to practice the profession of law is a very great privilege.").

Because Sonnenschein did not identify any constitutionally protected property or liberty interest, she has not alleged a viable claim for violation of substantive due course of law, and the trial court accordingly erred in denying the Board Members' plea to the jurisdiction as to

7

that cause of action. *See Honors Acad.*, 555 S.W.3d at 61. For the same reason, her claims for violation of her procedural right to due course of law necessarily fail. *See Texas S. Univ. v. Villarreal*, 620 S.W.3d 899, 905 (Tex. 2021) (noting that to determine whether governmental action violates due-course-of-law guarantee, courts first ask whether plaintiff has liberty or property interest that is entitled to protection and, if so, whether government defendant followed due course of law in depriving plaintiff of that interest); *University of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) ("The requirements of procedural due process apply only to the deprivation of interests protected under Article I, Section 19."). The trial court erred in not granting the Board Members' plea to the jurisdiction as to Sonnenschein's due-process causes of action.

### Statutory claim

As sub-parts of her first two causes of action, Sonnenschein alleged that the Board Members violated Section 82.039 of the Government Code by failing to develop specific guidelines for granting waiver requests. *See* Tex. Gov't Code § 82.039(a) ("To assist the Board of Law Examiners in making consistent and fair determinations related to the licensing of attorneys in this state, the board shall develop specific guidelines for . . . granting waiver requests."). However, we conclude that Sonnenschein does not have standing to pursue her ultra vires claims against the Board Members arising from their alleged violation of Section 82.039. While that section provides that the Board "shall develop the [required] guidelines . . . based on [its] past decisions and on any other criteria [it] considers necessary," it also provides that the Board is "not required to take any specific action provided in the guidelines." *See id.* § 82.039(b). To have standing under the facts alleged, Sonnenschein must have a concrete or

8

particularized stake in the declaration she sought that the Board Members acted ultra vires by failing to develop guidelines specific to waiver requests and that such declaration and any related injunctive relief will redress her alleged injury. *See Garcia v. City of Willis*, 593 S.W.3d 201, 207 (Tex. 2019). The very statute that Sonnenschein contends the Board Members violated—by not developing guidelines to use in evaluating waiver requests—provides the Board Members with complete discretion in determining whether to grant waiver requests by stating that, regardless of what the guidelines provide, the Board is not required to take any specific action. Therefore, Sonnenschein cannot demonstrate a legal injury, much less that the Board's development of such guidelines would redress any alleged past injury.[6] *See Suarez v. Silvas*, No. 04-21-00113-CV, 2022 WL 379965, at *9 (Tex. App.—San Antonio Feb. 9, 2022, no pet.) (mem. op.) (holding that plaintiff did not have standing to pursue ultra vires claim because she did not plead facts to show (1) concrete and particularized or actual or imminent injury or (2) that her requested prospective relief would likely redress her past injury). Accordingly, the trial court lacked subject-matter jurisdiction over Sonnenschein's Section 82.039 claim.

### *Equal-protection claims*

In her third and fourth causes of action, Sonnenschein alleges, respectively, that the Board Members violated her Texas constitutional and statutory rights to equal protection by (a) engaging in "apparent invidious discrimination due to [her] race, interracial marriage, and sex" through their "grossly disparate treatment" of her and a similarly situated prior applicant and (b) failing to treat her law study as equivalent to that of previous applicants who also had

---

[6] Although this standing issue constrains the judiciary from remedying the Board Members's years-long failure to comply with their mandatory statutory duty, it is within the legislature's purview to amend the statute or take other measures to ensure that the Board's duty is legally enforceable.

graduated from non-ABA-approved law schools but were nonetheless granted admittance to the Bar. *See* Tex. Const. art. I, §§ 3 ("All free men, when they form a social compact, have equal rights . . . ."), 3a ("Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin."); Tex. Civ. Prac. & Rem. Code § 106.001(1) (prohibiting state officials and employees from refusing to issue license, permit, or certificate "because of a person's race, religion, color, sex, or national origin"). As to her third cause of action, she alleged the following facts: that the Board Members approved the waiver request for an AWOX application of a White male in 2017 who had graduated from "the same category of California-registered-unaccredited law schools" that she had graduated from but that the Board denied her substantially similar waiver request and AWOX application "due to" her race, interracial marriage, and sex.[7] As to her fourth cause of action, Sonnenschein alleged that the Board Members have "previously accepted the law study of graduates of non-ABA-approved state-authorized law schools in Alabama, Massachusetts, [and] California" but declined to accept her law study of the same type, which violated her right to equal protection under the law, regardless of whether the Board Members based their decision on a suspect classification (e.g., race or sex).[8]

---

[7] In her response to the Board Members' plea to the jurisdiction, Sonnenschein expanded her equal-protection allegation to include the Board's "acceptance" of the law study of two additional, White applicants—in 2019 and 2021—who had graduated from law schools similar to NWCU's in that they were "California-registered unaccredited 4-year law schools."

[8] In her petition, she further explained that California "regulates local non-ABA-approved law schools of two types: 'accredited' schools, whose students must complete a 3-year study program, and 'registered unaccredited' schools, whose students are required to first pass the First-Year Law Students' Exam ('Baby Bar') before completing a 4-year study program." She alleged that "California regards graduates of both types of schools, as well as graduates of ABA-approved schools, as being on an equal footing with regard to being authorized to take the California Bar Exam and, upon passing the exam, being admitted to the California Bar."

10

The Board Members argued in their plea to the jurisdiction that Sonnenschein had not alleged sufficient facts to demonstrate the trial court's jurisdiction over her claim that they violated her rights to equal protection. Furthermore, they argued, Sonnenschein *could not* allege sufficient facts to support her claims because their denial of her AWOX application and request to waive the law-study requirement was the "expected result of uniform application of the Rules," which unequivocally provide that a J.D. degree obtained primarily through online courses or other distance-learning methods—as Sonnenschein's was—does not meet the law-study requirement. *See* Tex. Rules Govern. Bar Adm'n 13, § 5 (Sept. 8, 2017), *amended eff.* Dec. 1, 2019 (current version appearing as R. 13, § 6) ("A J.D. degree or an equivalent degree completed at a foreign law school that is earned primarily through online courses or other distance learning-learning mediums does not satisfy the requirements of this Rule."). However, despite Rule 13's provision that applicants from jurisdictions other than Texas may not satisfy the law-study requirement with a J.D. degree earned "primarily through online learning," we do not agree with the Board Members that the existence of such provision precludes, as a matter of law, an equal-protection claim. Sonnenschein is contending that the Board Members did *not* uniformly apply this provision to her application as compared to those of others similarly situated, a colorable claim falling under protection of the equal-protection clauses.[9] *See* *Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex. 1985) ("Under the rational basis test . . . similarly situated individuals must be treated equally under the statutory classification unless there is a rational basis for not doing so."); *see also Lindquist v. City of Pasadena*, 525 F.3d 383, 386–87 (5th Cir. 2008) (recognizing that equal-protection guarantee extends to claims of

---

[9] Sonnenschein also contests the Board's construction of the "no degree by correspondence" provision—arguing that "foreign" refers to non-U.S. jurisdictions rather than other states—but we need not resolve this legal question at this stage.

intentional, differential treatment of person from others similarly situated when there is no rational basis for difference, such as city's refusal to grant used-car-dealer license to plaintiff while granting them to others similarly situated); *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 275 n.13 (Tex. App.—Austin 2007, pet. denied) ("Claims of selective or discriminatory enforcement fall within the scope of the constitutional guarantee of equal protection under the law.").

The elements of a claim for violation of the equal-protection clause based on a party's membership in a protected class are that the challenged act had a disproportionate impact on a protected class and had a discriminatory intent or purpose. *See Richards v. League of United Latin Am. Citizens (LULAC)*, 868 S.W.2d 306, 312 (Tex. 1993); *Su Inn Ho*, 984 S.W.2d at 685 ("Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). While in her third cause of action—the Board Members' alleged discrimination due to her sex, race, and interracial marriage—Sonnenschein has alleged that she is a member of a protected class, she has not alleged facts supporting the other necessary elements, to wit: any discriminatory intent or disparate impact on a protected class. Instead, she makes the conclusory allegation of "apparent invidious discrimination." Construing the pleadings liberally in favor of jurisdiction and accepting the allegations in Sonnenschein's pleadings as true, as we must do under a de novo review of a ruling denying a plea to the jurisdiction, we cannot say that she has alleged sufficient facts to affirmatively demonstrate that the trial court has jurisdiction to hear her equal-protection and Section 106.001 claims of alleged sexual or racial discrimination. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). However, we cannot conclude that her petition affirmatively demonstrates incurable defects of jurisdiction. *See id.* at 226–27. Therefore, although the trial court did not

12

have jurisdiction over Sonnenschein's equal-protection and Section 106.001 claims based on sexual or racial discrimination as pleaded, Sonnenschein should be afforded the opportunity to amend her pleadings with respect to those claims to allege facts supporting the required elements of such claims, as noted above.  *See id.*; *see also Port of Corpus Christi, LP v. Port of Corpus Christi Auth. of Nueces Cnty.*, No. 13-19-00378-CV, 2021 WL 2694772, at \*12–13 (Tex. App.—Corpus Christi-Edinburg Jul. 1, 2021, no pet.) (mem. op.) (concluding that trial court erred in dismissing equal-protection claim without affording plaintiff opportunity to amend pleadings that did not contain sufficient facts demonstrating elements of claim but did not affirmatively demonstrate incurable defects); *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 518 (Tex. App.—Austin 2014, no pet.) (remanding to allow plaintiff reasonable opportunity to amend pleadings to cure jurisdictional defect as to equal-protection claim where petition was "insufficient to invoke the district court's subject-matter jurisdiction" but did not "affirmatively negate jurisdiction either").

As to Sonnenschein's fourth cause of action—an equal-protection claim arising from the Board Members allegedly treating her differently than other similarly situated individuals with respect to the type of law study they completed—we similarly conclude that she has not alleged sufficient facts to affirmatively demonstrate that the trial court has jurisdiction. *See Miranda*, 133 S.W.3d at 226.  Specifically, she does not allege facts showing that she was similarly situated to other applicants in all material ways[10] or that the Board Members treated her differently without a reasonable basis.  *See Texas Dep't of Transp. v. City of Sunset Valley*,

---

[10] For instance, she did not allege whether such other "similarly situated" graduates of "non-ABA-approved state-authorized law schools" submitted AWOX applications, completed their law studies "primarily through online courses," were permitted to take the Texas Bar despite not meeting the law-study requirement, or met the other requirements of admission to the Bar.

13

146 S.W.3d 637, 647 (Tex. 2004) (noting that to bring individual equal-protection claim, plaintiff must demonstrate that she was intentionally singled out and treated differently than others similarly situated); *City of Floresville v. Starnes Inv. Grp., LLC*, 502 S.W.3d 859, 868 (Tex. App.—San Antonio 2016, no pet.) (reversing trial court's denial of plea to jurisdiction as to equal-protection claim because pleading made mere conclusory statement that plaintiff was treated differently from others similarly situated but did not allege any facts describing how parties were similarly situated or nature of alleged different treatment); *Sanders v. Palunsky*, 36 S.W.3d 222, 225 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("[T]o assert an equal protection claim [that is not based on a suspect class], the deprived party must establish two elements: (1) that he was treated differently than other similarly-situated parties; and (2) he was treated differently without a reasonable basis."); *see also John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000) ("The Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently."). Accordingly, Sonnenschein's pleadings, on their face, failed to invoke the trial court's jurisdiction. However, we again cannot conclude that her pleadings affirmatively demonstrate incurable defects of jurisdiction. *See Miranda*, 133 S.W.3d at 226–27. Because this is an issue of pleading sufficiency, and consistent with *Miranda*, we must remand this claim to the trial court to afford Sonnenschein the opportunity to amend her pleadings and allege facts supporting the above-noted elements of a disparate-treatment claim to sufficiently invoke the trial court's jurisdiction. *See id.*; *City of Austin v. Cherry*, No. 03-14-00212-CV, 2015 WL 4508819, at *2 (Tex. App.—Austin July 21, 2015, no pet.) (mem. op.) (reversing trial court's order denying city's plea to jurisdiction and remanding cause to allow plaintiff to amend pleadings that were insufficient to affirmatively demonstrate jurisdiction but did not demonstrate incurable defects in jurisdiction).

14

*Uniform Declaratory Judgment Act (UDJA) claims*

Lastly, Sonnenschein sought the following declarations under Chapter 37 of the Civil Practice and Remedies Code: (1) Sonnenschein "has the right to judicial appeal of [the Board Members'] decisions . . . that allegedly violate Texas constitutional or statutory provisions," (2) the Board Members' "willful failure to develop and use" the guidelines prescribed by Government Code Section 82.039 caused their evaluation of Sonnenschein's waiver request "to be unlawful," and (3) Sonnenschein's "status as a graduate of a California-registered law school should be deemed equivalent to that of a graduate of a non-California state-accredited law school and thereby accepted as sufficient under the law-study exception." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a) ("A person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."). The Board Members contended in their plea to the jurisdiction that these claims must be dismissed because in essence they constitute constitutional challenges to the rules, which must be filed against the Board. *See* Tex. Gov't Code § 2001.038(c) (requiring state agency to be party to rule challenge); *see also B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017) ("The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties.").

As to her first and third requested declarations, Sonnenschein does not seek to have determined any question of construction or validity arising under any statute affecting her

"rights, status, or other legal relations." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). Her sought declarations are therefore not within the scope of the UDJA. *See id.*; *Tijerina v. Texas Prop. Cas. Ins. Guar. Ass'n*, No. 03-13-00300-CV, 2015 WL 869344, at *3 & n.6 (Tex. App.—Austin Feb. 26, 2015, pet. denied) (mem. op.) (concluding that when plaintiff had not challenged validity of any statute or sought declaration of rights thereunder but merely challenged agency's actions, UDJA did not apply, although plaintiff could assert ultra vires claims against state actors in their official capacities). Furthermore, her first sought declaration would not resolve any controversy between her and the Board Members because—notwithstanding the absence of any statute expressly providing her a right to judicial review of the Board's decision—it is settled law that she may sue the Board Members for their alleged ultra vires actions, which is what she has done by this lawsuit (and which we have discussed supra). *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). And, as the Board Members argued in their plea to the jurisdiction, the gravamen underlying Sonnenschein's third requested declaration is that the Board Members have allegedly misconstrued or misapplied the Rules, a type of challenge that must be brought against the Board. *See* Tex. Gov't Code § 2001.038(c).[11]

While as to her second requested declaration Sonnenschein cites a statute—Government Code Section 82.039—that she contends affects her "rights, status, or other legal relations," *see* Tex. Civ. Prac. & Rem. Code § 37.004(a), we have already determined that she does not have standing to pursue a claim for the declaration because she cannot show that obtaining it will redress any past or imminent injury, given that the Board Members

---

[11] Because it is not necessary to our holding and is not an issue in this lawsuit, we expressly do not decide the question of whether Sonnenschein may maintain a viable rule challenge under the APA or any other type of claim under the APA, including whether she has a right to judicial review of the Board's decision denying her application (although the parties appear to agree that she does not).

16

have absolute discretion to decide waiver requests irrespective of the guidelines' provisions. We conclude, therefore, that the trial court erred in denying the Board Members' plea to the jurisdiction as to Sonnenschein's UDJA claims.

## CONCLUSION

The trial court lacked jurisdiction over Sonnenschein's claims as pleaded in her live petition and therefore erred in denying the Board Members' plea to the jurisdiction. We accordingly reverse the trial court's order and render judgment dismissing Sonnenschein's claims except her claims for violations of her rights to equal protection, which claims we remand to the trial court to allow Sonnenschein an opportunity to amend her pleadings to state sufficient facts supporting them and for further proceedings consistent with this opinion.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed:   June 1, 2022

17